# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

PEKIN STAVE & MANUFACTURING COMPANY *v.* RAMEY.

Opinion delivered May 6, 1912.

1. PLEADING—UNCERTAINTY OF COMPLAINT—WAIVER.—Objection to a complaint for uncertainty and indefiniteness is waived by failure to move to make it more definite and certain. (Page 3.)

2. MASTER AND SERVANT—INJURIES BY DEFECTIVE MACHINERY—INSTRUCTION.—In an action by a servant for personal injuries received while working near a cut-off saw, an instruction that, before finding for the plaintiff, the jury must believe that the injury was caused by defendant's negligence, and that, if defendant was operating a cut-off saw without proper guards to prevent the saw from throwing refuse matter from said saw to where employees were discharging their duties, it would be liable for any injury resulting therefrom, was erroneous in charging as matter of law that a cut-off saw without a guard was unsafe; there being a conflict of evidence upon that question. (Page 5.)

3. SAME—DUTY OF MASTER TO FURNISH SAFE INSTRUMENTALITIES.—A master must exercise ordinary care to provide a reasonably safe place in which and reasonably safe instruments with which to work. (Page 6.)

4. ATTORNEY AND CLIENT—AUTHORITY OF ATTORNEY.—An attorney's statement that he represents a certain party is *prima facie* sufficient, and can not be legally questioned until facts or circumstances are shown by affidavit or otherwise sufficient to raise a legal presumption that he is not authorized to appear for the party he assumes to represent. (Page 7.)

5. TRIAL—MISCONDUCT OF COUNSEL.—In an action by a servant against his master for personal injuries, where plaintiff's counsel unnecessarily calls the jury's attention to the fact that defendant held casualty insurance against the injury complained of, and prejudice resulted therefrom, such misconduct will call for a new trial. (Page 9.)

Appeal from Van Buren Circuit Court; *George W. Reed,* Judge; reversed.

*T. D. Wynne* and *Garner Fraser,* for appellant.

1. The court erred in requiring attorneys to disclose by whom they were employed. The authority of a regularly

licensed attorney is presumed, and he can only be required to show his authority upon an affidavit of the adverse party, showing substantial reasons why the interests of the adverse. party are jeopardized.   1 Ark. 104; 2 Ark. 358; 40 Ark. 131; 159 Ala. 645, 650; 49 So. 255; 113 S. W. 618; 152 Ala. 243; 44 So. 637; 126 Am. St. Rep. 30; 71 Fed. 924; Week on Attorneys, § § 195, 196; 91 Mo. 207; 3 S. W. 860.

The court's error in requiring appellant's attorney to withdraw from the case was a denial of that right to appear by counsel which the law allows to every litigant.   29 Cal. 147; 87 Am. Dec. 164; 9 Wheat. 830; 1 Hempstead (Ark.) 43.

In permitting appellee's counsel to make statements in the presence of the jury that appellant had insurance in an indemnity company the court committed prejudicial error. The fact that the employer insured against loss was wholly immaterial. 162 Mass. 251; 38 N. E. 510; 80 Miss. 340; 31 So. 790; 9 Finch's Insurance Dig., 284; Labatt, Master & Servant, § 826; 90 Me. 369; 38 Atl. 333.

2.   The second instruction errs in making it the absolute duty of appellant to provide the saw with a proper hood, as well as in ignoring the question of assumption of risk.   4 Thompson on Neg., § § 4020, 4709; 41 Fed. 920; 119 Pa. 149; 13 Atl. 65; 59 Ark. 480, 481.

*E. G. Mitchell* and *W. N. Ivie,* for appellee.

1.   Negligence is shown (1) because appellant's employee allowed the blocks to pile up against the saw when it was his admitted duty to keep them wheeled away.   100 Ark. 437. (2)   Because appellant did not provide the machine with an apron or shield which would have prevented the blocks from piling up against the saw.   100 Ark. 437.

2.   A general objection to the court's instructions is sufficient to call attention to the form or any particular language of the instruction.   98 Ark. 17, 211, 227, 425.

3.   Rather than to retire from the case, it was the duty of the attorney to obey the order of the court and answer the question who employed him, whether the order was correct or not.   At any rate the controversy between counsel for defendant and the court could not have prejudiced the appellant, since it did not pertain to the merits of the case.   75

Ark. 373. Appellee was within his rights in seeking to discover by whom the attorney was employed, to the end that he might be guided in the effort to select an unbiased jury.   99 Minn. 97; 9 Am. & Eng. Ann. Cases, 318; 100 N. Y. App. Div. 234; 91 N. Y. Supp. 895; 162 Mass. 252; 36 Col. 498; 37 Col. 432; *Id.* 431; 110 N. W. 577; 96 S. W. 530; 124 Wis. 554; 126 Wis. 224; 127 Wis. 332; 129 Wis. 98.

FRAUENTHAL, J.  This is an action instituted by the plaintiff, A. H. Ramey, to recover damages for the injury he received on account of the alleged negligence of the defendant while he was in its employ.   The defendant is a corporation engaged in manufacturing staves at its mill, located at Leslie, Arkansas, and plaintiff was in its service at this plant.

The plaintiff alleged that he was at the time of the injury complained of performing the duty of picking up and hauling away splits or shavings, and while thus employed a block of wood was caught in a saw and hurled with great force against him, striking him above the eye and injuring him severely. The complaint did not set forth definitely the acts of negligence charged against the defendant.   Without asking, however, that the acts of negligence attributed to it be more definitely stated, defendant filed its answer, in which it made a general denial of the allegations of the complaint, and pleaded that plaintiff had assumed the risk of the injury he sustained.

The testimony tended to prove that the alleged negligence on the part of defendant causing the injury consisted in failing to furnish plaintiff a safe place in which to perform the duties of his service.   This negligence arose either from the failure on the part of the defendant to furnish a saw provided with an apron or shield to prevent the blocks of wood striking the saw from being hurled from it, or in permitting the blocks to accumulate upon the floor to such an extent that they reached the saw.

By failing to ask that the complaint be made more definite and certain, the defendant waived any objection to it upon this ground, and the complaint will be deemed to have been amended to conform to the proof.   The trial resulted in a verdict and judgment in favor of the plaintiff.

Plaintiff had been in the employ of the defendant for some time prior to receiving the injury complained of, and

was engaged in duties about the yard of the plant. On the day he sustained the injury, he was directed by the defendant's foreman to carry away the shavings or splits from a machine called a "bucker." This machine was situated about six to ten feet from a cut-off saw, from which the block was thrown. At this saw the ends of staves were sawed off, making blocks about five to six inches square, and seven-eighths inch thick. The saw was about eighteen to twenty-four inches above the floor upon which the blocks would fall, and as they accumulated they were carried away by another servant. Plaintiff's duty consisted on this occasion in carrying away the shavings from the bucker, and he was not engaged in any duty at the saw; and he testified that this was the first time that he performed any service at this place. While thus engaged, a wooden block caught in the saw and was hurled with great force against the plaintiff's head, injuring him painfully and severely. From the facts and circumstances adduced in evidence, we think the jury were warranted in finding that this block either fell on the saw as it was cut from the stave, or that the blocks had accumulated upon the floor to such an extent that they toppled over upon the saw, and by its revolution this block was hurled against the plaintiff, who was probably six to ten feet away.

There was testimony tending to prove that an attachment, known as an apron or shield, could have been placed on the saw, which would prevent the blocks from being thrown by it against one, and also from coming in contact with the saw after they had fallen on the floor; and that this attachment could have been placed thereon at little expense. The saw did not have the attachment, and there was testimony from which the jury were warranted in finding that the saw, without this attachment, was not a safe appliance for the work. On the other hand, there was testimony tending to show that the saw, unguarded by the shield or apron, was a reasonably safe appliance, and that a block seldom fell on the saw, and never before was hurled from it as on this occasion. The testimony on the part of plaintiff tended further to prove that his duties had prior to this time consisted of working upon the yard, and that he had not worked at this place or near the saw before the day on which the injury occurred, and that on this account he was not familiar with the

manner in which it was operated and did not know or appreciate the dangers arising therefrom.

From the testimony adduced at the trial, we are of the opinion that there was sufficient evidence to warrant a finding that the defendant was negligent in not exercising ordinary care to furnish a safe machine near which the plaintiff was directed to work, by reason of its failure to supply it with an apron or shield in order to prevent the saw from hurling the blocks; or that the defendant was negligent in permitting the blocks to accumulate upon the floor to such a height as to fall upon the saw. On the other hand, we think that there was sufficient evidence to warrant the jury in finding that the saw which was furnished was a reasonably safe instrumentality for performing the work, and that it was a question of fact for a jury to determine whether or not the defendant was guilty of negligence in permitting the blocks to accumulate upon the floor near the saw, as was done on this occasion.

The court gave a number of instructions to the jury, but gave none predicating the act of negligence on the part of plaintiff in permitting the blocks to accumulate upon the floor at the saw so as to come in contact with it. The sole act of defendant's alleged negligence to which the court directed the jury's attention was in the failure to provide the cut-off saw with a shield or apron.

The court, over appellant's objection, gave the following instruction:

"2. You are instructed that, before you would be authorized to find for the plaintiff, you must believe by a preponderance of all the testimony in the case that the plaintiff's injury was caused by the negligence of the defendant, and you are instructed that if you find the defendant was operating a cut-off saw, without proper guards or hoods to prevent the saw from throwing the refuse matter from said saw to where employees were discharging their duties, that it would be liable for any injury that its employees might sustain by reason of being hit and injured by such refuse."

By this instruction the court charged the jury in effect that a cut-off saw without a guard or hood attached to it was an unsafe machine, and that it was an act of negligence on defendant's part in failing to furnish a saw with that particular

safeguard. This, we think, was a peremptory instruction upon a disputed question of fact, and for that reason was erroneous. It is well settled that it is the duty of the master to exercise ordinary care to provide his servants with reasonably safe implements and instrumentalities with which to work, and also a reasonably safe place in which to perform their labor. But the master can not be charged with a breach of this duty simply on the ground that a safer method or a safer machine than that from which the injury resulted could have been obtained and might have been adopted. He is not required to furnish any particular kind of appliance or instrumentality for doing the work. He has performed the full measure of his legal duty when he has exercised ordinary care to furnish an implement or instrumentality that is reasonably safe and suitable for the use of the servant and the work to be done. The fact that some other kind of machine or implement would have been safer or better than the one which caused the injury is not the test of the failure on the part of the master to perform his duty, or of negligence from which to fix upon him a liability.

As is said in 1 Labatt on Master & Servant, § 35: "The test is not whether the master omitted to do something he could have done, but whether in selecting tools and machinery for their use he was reasonably prudent and careful; not whether better machinery might have been obtained, but whether that provided was in fact adequate and proper for the use to which it was to be applied."

In the case of *Wilcox* v. *Hebert*, 90 Ark. 145, an action very similar to the one at bar was brought, and a similar issue was involved therein. In that case an instruction in every essential similar to the above instruction was given, and was disapproved by this court. In holding such an instruction erroneous, the court said that it made the master an insurer of the safety of the machine. After stating the well-settled principle that a master is not an insurer of the safety of the appliance furnished, and is not bound to furnish any particular kind of appliance nor to use any particular character of safeguard thereon against danger, the court said: "The master is only held to the exercise of ordinary care, proportionate to the danger to be incurred, in the selection of reasonably safe

machinery and appliances, and in keeping them in proper condition." The court further said: "The question of his liability for damages on account of having furnished a piece of machinery which turns out to be unsafe, and which proves to be the proximate cause of the injury of the servant, must be tested by the question as to what care a man of ordinary prudence would have exercised under similar circumstances. A mere error of judgment in selecting a more dangerous kind of machine than could have been provided, or in altering a machine so as to render it less safe, does not necessarily convict the master of culpable conduct toward his servant, but it is a question for the jury to say whether or not it constituted negligence."

The above instruction given in this case was for the same reason erroneous, and necessitates a reversal of this judgment.

There are other errors assigned by counsel why the judgment should be reversed, but we do not deem it necessary to note them, for the reason that upon another trial of this case these alleged errors will not likely occur.

In view, however, of another trial, we deem it proper to note the action of the trial court in permitting the counsel for plaintiff to ask one of the attorneys who professed to represent the defendant whether he was employed by a casualty company which indemnified the defendant against loss occasioned by this injury, and in refusing to permit said attorney to appear in the case upon his declining to answer the question. After both parties had announced ready for trial, and while several members of the regular panel of the petit jury were in their box, the counsel for plaintiff asked one of the attorneys for defendant if he represented an insurance company in the case. The attorney answered that he represented the defendant in the case. The court then said that this was not an answer to the question propounded, and, the attorney declining to answer further, the court stated that he should not appear in the case; whereupon the attorney withdrew from the case.

An attorney is an officer of the court, and amenable to it for the proper performance of his duty. He should not represent a party in a case without authority. Whether or not he has such authority may be inquired into by the court,

after proper showing has been made challenging such authority, because the party whom such attorney professes to represent may be bound by his actions in the case. This inquiry may be made by the court upon proper application by the party he professes to represent, or by the opposing party; but in either event it is necessary that due cause should be shown in such application. The attorney's license is *prima facie* evidence of his authority to appear for and represent any person in a litigation whom he professes to represent. The statement of the attorney that he does represent such party is *prima facie* sufficient, and must stand until his authority is properly questioned. In order to properly question his authority, it is necessary for the applying party to state facts showing or tending to show want of authority. The attorney's authority can not be capriciously demanded. The rights of the parties in such matters, and the practice in such inquiry, is thus stated in the case of *Cartwell* v. *Menifee*, 2 Ark. 356.

"Every attorney regularly licensed and duly admitted to practice in the courts of this State possesses by virtue of his license and admission a general right to appear for any of the suitors in the courts where he is admitted to practice, who may retain him for that purpose; but his license is not of itself an authority to appear as the representative of any particular person until he is in fact employed or retained for such person. Yet his authority to represent any suitor on whose behalf he may appear can not be legally questioned until facts or circumstances are shown by affidavit, or otherwise, sufficient to raise a legal presumption that he is not legally authorized to appear for the party he assumes to represent." *Tally* v. *Reynolds*, 1 Ark. 99; *Wyatt* v. *Burr*, 25 Ark. 476; *Bush* v. *Visant*, 40 Ark. 125.

In the case at bar the attorney professing to represent the defendant, upon inquiry made by the court, stated that he did represent the defendant. It was not necessary for the attorney to make any further showing of his authority until some statement of facts made under oath tended to overcome this *prima facie* evidence of his authority to represent the defendant. Without such statement, the court erred in permitting the attorney to be interrogated further relative to his authority, and in denying him the right to appear in the case.

But it is urged by counsel for plaintiff that this question was asked the attorney in order that he might be advised as to who were the interested parties in the case, so that in questioning the members of the jury on their *voir dire* he might use this as a basis for challenging them. If counsel for plaintiff honestly and in good faith thinks that any of the veniremen is in any way connected with a casualty company insuring the defendant against loss for the injury complained of in the case, he can ask the jurors on their *voir dire* relative to this. If, however, his real purpose is to call unnecessarily the attention of the jury to the fact of the insurance, and thereby to prejudice them against the defendant's rights, then this would be clearly an abuse of this privilege, and should be promptly stopped by the trial judge. In case it appears that prejudice to the rights of the defendant does result therefrom, it would call for a new trial or a reversal of the judgment on appeal. In an action by a servant against his master for damages growing out of a personal injury, it is improper for the jury to take into consideration the fact that the defendant is indemnified against accident to his employees. Evidence of such fact could throw no light upon the issue involved in the case, and would be wholly incompetent. 2 Labatt, Master & Servant, § 826.

The endeavor, therefore, by any character of practice, to press unnecessarily upon the jury's attention the fact that a defendant is indemnified against loss for the injury which is the subject-matter of the suit could only have for its purpose the arousal of sympathy for the one party or prejudice against the other. Such action or practice is therefore improper, and, if successful in its desired effect, should call for a new trial.

For the error in giving the above instruction No. 2 on behalf of the plaintiff, the judgment is reversed, and the cause remanded for new trial.