## Cooper *v.* Kelly.

### Opinion delivered October 22, 1917.

1. TRIAL—PERSONAL INJURY ACTION—EXAMINATION OF VENIREMEN ON VOIR DIRE—CONNECTION WITH INSURANCE COMPANY.—It is within the province of an atttorney representing a plaintiff to question veniremen concerning their relation to any casualty company, whom the attorney might know or might honestly believe to have insured the defendant against loss from the injury which the plaintiff had sustained at the hands of the defendant.

2. TRIAL—EXAMINATION OF VENIREMEN.—Counsel will be permitted to ask veniremen questions intended to elicit bias or prejudice, which would influence their verdict one way or another, and the discretion of the trial court in permitting such questions will not be disturbed on appeal unless the court has manifestly abused its discretion.

3. NEGLIGENCE—PERSONAL INJURIES—DUTY TO USE ORDINARY CARE.— Plaintiff was injured by being struck by a team driven by an employee of defendant. *Held*, instructions were proper which told the jury that it was the duty of the driver to use ordinary care to avoid injuring plaintiff, and that it was also his duty to use ordinary care to observe persons crossing the street, and to use such care to avoid injuring them.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*Buzbee, Pugh & Harrison,* for appellant; *E. V. Mitchell,* of counsel.

1.   The court erred in permitting counsel for plaintiff to question the jurors on their *voir dire* in reference to casualty and indemnity companies, and in permitting him to make statements to the effect that such companies insure against damages, etc.; which line of questioning and remarks were improper and prejudicial.   104 Ark. 1; 114 *Id.* 542.

2.   The instructions given on plaintiff's theory were erroneous and prejudicial.   Nos. 1 and 2 were abstract. 111 Ark. 134; 116 *Id.* 284, 291; 101 *Id.* 537.

3.   The court erred in refusing instructions asked by defendants.   96 Ark. 206; 82 *Id.* 499; 97 *Id.* 469.   No negligence was proven and the verdict is excessive.

*Rector & Sawyer,* for appellee.

1.   There was no error in permitting the *voir dire* questions to jurors.   The cases in 104 Ark. 1 and 114 *Id.* 542 do not apply here.   The facts are different.   The questions asked were proper and no abuse of discretion by the court was shown.

2.   There is no error in the instructions; the verdict is sustained by the evidence and is not excessive.   29 Cyc. 570.

WOOD, J.   This suit was instituted by the appellee against appellants to recover damages for personal injuries which she alleged she sustained in January, 1914, while walking across Central avenue, a public highway, in the city of Hot Springs.   She alleged that the appellants were doing a livery business under the name of Cooper Brothers in the city of Hot Springs, and were the owners of a vehicle and horses which were being driven along Central avenue by the servant of appellant; that such servant so carelessly and negligently drove and managed the horses that the horses and vehicle struck the appellee, throwing her to the ground and breaking her arm and inflicting other severe injuries, for which she asked damages in the sum of $5,000.

The appellants denied the material allegations of the complaint, and set up the defense of contributory negligence.

When the selection of the jury was begun counsel for appellee called counsel for appellant before the court, out of the hearing of the jury, and announced that he was informed and believed that appellants' counsel represented an indemnifying company which was interested in the result of the suit and wanted to know the name thereof so he could properly examine the jury on *voir dire*. Appellants' counsel refused to give the name. The court refused to compel counsel to disclose the name, but, at appellee's request, announced that it would permit counsel to examine the jurors as to their relationship with indemnifying companies so as to determine the jurors' interest. Whereupon counsel for the appellee, over the objection of the appellants, asked one juror on his *voir dire* whether or not he represented any accident or casualty insurance company, to which question the juror answered, "No.". And appellee's counsel asked another juror whether or not he was under any obligation to any accident insurance company or was the agent of any such company. The juror answered, "No." And other jurors were asked, "Do you know of any accident company or any agent of such company that has any influence or control over you in the city of Hot Springs?" to which they answered, "No." And another juror was asked whether he knew that parties in public business were insured against accidents that occurred, and the juror answered, "Yes." Then the juror was asked, "Do you know of any insurance company or casualty company or any agent of such company, in Hot Springs or anywhere else, to whom you are under obligations?" and the juror answered "No," Still another juror was asked, "Do you know any of these accident casualty companies?" and the answer was, "Know all of them, I suppose." Question, "They haven't any hold on you?" Answer, "None that I know of, nobody else."

The rulings of the court in permitting these questions and answers are assigned as error, and to sustain their contention that these rulings are erroneous, counsel for appellants rely upon the cases of *Pekin Stave & Mfg. Co.* v. *Ramey,* 104 Ark. 1, and *Williams* v. *Cantwell,* 114 Ark. 542.

In the first mentioned case, after both parties had announced ready for trial, and while several members of the petit jury were in the box, counsel for the plaintiff asked one of the attorneys for the defendant if he represented an insurance company in the case. The attorney questioned answered that he represented the defendant. The court announced that that was not an answer to the question, and upon the attorney declining to answer further the court stated that he should not appear in the case, whereupon the attorney withdrew from the case. Upon the above facts the court held that the authority of an attorney to appear for a client whom the attorney stated that he represented could not be challenged in the above manner and the attorney denied the right to appear for the client whom he professed to represent.

In the above case the attorney for the plaintiff contended that he propounded the questions to the defendant for the purpose of ascertaining who were the interested parties in order that he might use the information to test the qualification of the jurors on their *voir dire.* In commenting upon this contention, the court said: "If counsel for plaintiff honestly and in good faith thinks that any of the veniremen is in any way connected with a casualty company insuring the defendant against loss for the injury complained of in the case, he can ask the jurors on their *voir dire* relative to this. If, however, his real purpose is to call unnecessarily the attention of the jury to the fact of the insurance, and thereby to prejudice them against the defendant's rights, then this would be clearly an abuse of this privilege, and should be promptly stopped by the trial judge. In case it appears that prejudice to the rights of the defendant does result therefrom, it would call for a new trial or a reversal of the judgment

on appeal. In an action by a servant against his master for damages growing out of a personal injury, it is improper for the jury to take into consideration the fact that the defendant is indemnified against accident to his employees. Evidence of such fact could throw no light upon the issue involved in the case, and would be wholly incompetent. The endeavor, therefore, by any character of practice, to press unnecessarily upon the jury's attention the fact that a defendant is indemnified against loss for the injury which is the subject-matter of the suit could only have for its purpose the arousal of sympathy for the one party or prejudice against the other. Such action or practice is therefore improper, and, if successful in its desired effect, should call for a new trial.''

In *Williams* v. *Cantwell, supra,* the attorney for the plaintiff, not in the presence and hearing of any of the veniremen, asked the attorney for the defendant if he was not the attorney for and representing the Home Life and Accident Insurance Company, and upon the attorney for the defendant declining to answer, the attorney for the plaintiff addressed the court, in the presence and hearing of the veniremen, and said: ''Your Honor, this gentleman here (indicating the attorney for defendant), in my opinion and information, does not represent the defendant, but represents an insurance company for him, and for the purpose of inquiring from the gentleman, and for that purpose only, as to whether he is representing the insurance company, I am asking, in good faith, who his client is, and I ask you, as you did for me, and as the Supreme Court upheld you in doing, to require him to state who he represents.'' In questioning the veniremen as to their qualifications as jurors the attorney for plaintiff asked each of them if he was in the employ of the Home Life and Accident Insurance Company, and upon his answering said question in the negative the court permitted the attorney to ask each of them ''if they or either of them expected to be employed by the Home Life and Accident Insurance Company, and if they were in the employ of any accident insurance company.''

In commenting upon the above facts we said: "It is, of course, true that the trial judge must be clothed with much discretion in determining what questions may be asked veniremen by an attorney or veniremen on their *voir dire* as a basis for challenging them. But that discretion is subject to review, and if it appears that the attorney's real purpose is to call unnecessarily the attention of the jury to the fact that a party to the litigation is insured against liability, such action should be promptly stopped by the trial judge, and, where it appears that prejudice to the rights of the defendant results therefrom, the judgment must be reversed on appeal. * * * It will be observed that the appellee's attorney appears to have known not only that appellant's attorney did represent an insurance company, but to have known the particular company which he represented, and his speech before the court, as well as his questions to the jurors, appears to us to have unnecessarily advised the jurors of the fact that appellant was insured against liability and that he would not be required to pay any verdict which they might render against him. Information as to any juror's connection with any insurance company could have been obtained in a less dramatic manner by asking each of the jurors if he represented or was connected with any casualty company insuring employers against liability, or if he was connected with any insurance company, or any other proper question which might have tended to disclose whether any juror had any bias or prejudice likely to influence his verdict one way or the other."

(1) It will be observed that the facts in the above cases clearly differentiate them from the case in hand. In those cases it was manifest that the conduct of the attorney representing the successful party and the rulings of the court were well calculated to impress on the minds of the jury that the attorney ostensibly appearing for the defendants in the respective cases was not really their attorney but was an attorney for an indemnity insurance company that had insured the defendants against any loss that they might sustain on account of such accidents as

were therein complained of, and that the defense was really being made for the benefit of such indemnity company or companies. In both of those cases it is expressly recognized that it is within the province of an attorney representing a plaintiff to question veniremen concerning their relation to any casualty company whom the attorney might know or might honestly believe to have insured the defendant against loss for the injury which the plaintiff had sustained at the hands of the defendant.

(2) Trial courts must necessarily have a wide discretion in permitting questions that are intended to test the competency of a venireman from which the jury must be empaneled to try the cause. Questions that are intended to elicit any possible bias or prejudice that the veniremen might have "likely to influence his verdict one way or the other" are always proper, and the rulings of the trial court in permitting such questions will never be disturbed unless there is a manifest abuse of its discretion. The questions propounded to the veniremen in the instant case in and of themselves were not objectionable, and the record does not disclose anything in the conduct of the attorney in the manner of propounding the questions, or other conduct on his part aside from this, that was calculated to cause the jury to believe that the defense was actually being conducted in the interest of some casualty insurance company instead of those who were named and who appeared as defendants at the trial.

Had nothing more occurred in the above cases, relied upon by the appellants, than the mere asking of the questions therein propounded, doubtless this court would not have condemned as erroneous and prejudicial the rulings of the trial court in permitting such questions. Doubtless counsel for appellees in the instant case were permitted a broad scope of inquiry concerning the veniremen's connection with any casualty insurance company in Hot Springs or elsewhere by reason of the conduct of the appellant's counsel in refusing to discover whether or not he represented any casualty company, and, if so, in refusing to divulge the name of such company. Had such informa-

tion been given to appellee's counsel, we may assume that the court would have restricted the inquiry accordingly.

While it was improper, as held in *Pekin Stave & Mfg. Co.* v. *Ramey, supra,* to interrogate counsel in the presence of the veniremen as to whether he represented a casualty company, and upon the attorney giving a negative answer to refuse to permit him to appear for the defendant, nothing of that kind occurred at the trial of this cause. Although a similar question was asked the attorney, which he refused to answer, this did not occur in the presence of the veniremen, and hence their minds could not have been prejudiced thereby.

(3) The court instructed the jury, over the objection of the appellants, as follows:

"1. It was the duty of the driver of the hack to use ordinary care to avoid injuring the plaintiff, and if you believe from the preponderance of the evidence that he failed in this duty and plaintiff was injured by such failure your verdict should be in plaintiff's favor." And told them that, "ordinary care is such care as an ordinarily prudent and careful driver would have used under the circumstances of the case."

"2. It was the duty of the driver to use ordinary care to observe persons crossing the street and to use ordinary care to prevent injury to such persons, and if you believe from a preponderance of the evidence that he did not use such care and the plaintiff was injured as a result of his failure to use such care, then you should find for the plaintiff."

Appellants contend that these instructions were abstract, because they were aside from the issue defined by the pleadings and the evidence.

The issue as to the alleged negligence of the appellants is raised by the allegations in the complaint that the servant of the defendants "so carelessly and negligently drove and managed the horses and vehicle" as to strike the plaintiff and cause the injuries of which she complains and by appellants' answer denying such allegations.

Appellants contend that inasmuch as the uncontradicted proof showed that the driver of the vehicle saw the plaintiff when she ran into the street, the only issue for the jury to pass upon was whether the driver was negligent in handling his team after the plaintiff ran into the street. This may be conceded and still the instructions complained of did not permit the jury to wander "in a vague and boundless region of abstract," as asserted by counsel. On the contrary, the instruction limited the jury to the consideration of the conduct of appellants' hack driver with reference to the direct and proximate result of such conduct as it affected appellee on the occasion when she was crossing the public street, and when he, at the same time and place, was driving appellants' hack upon such street. The allegation, in short, was that appellants' driver on that occasion so negligently drove and managed the horses that he struck and injured the plaintiff. The instruction very correctly told the jury that it was the duty of the driver to use ordinary care to observe persons crossing the street to prevent injury to such persons.

It certainly constituted negligent driving if appellants' hackman failed to exercise ordinary care to observe appellee while she was crossing the street, if by reason of such failure he ran upon and injured her. It would also constitute negligence, even though the hackman exercised ordinary care to discover the appellee, if, after discovering her, he had failed to exercise ordinary care in managing his team and vehicle so as to avoid the injury to her.

The issues of negligence and contributory negligence were submitted to the jury under instructions which declared the law.

Appellants contend that there was no evidence to sustain the verdict. It could serve no useful purpose to set out and discuss in detail the evidence. After carefully examining it, we have reached the conclusion that the issues of negligence and contributory negligence were, under the evidence, questions for the jury, and as the jury

were properly instructed upon these issues, the verdict in favor of the appellee here is conclusive.

Affirmed.