GILL *v.* WHITESIDE-HEMBY DRUG COMPANY.

4-5302                 122 S. W. 2d 597

Opinion delivered December 19, 1938.

*Edwin W. Pickthorne* and *Tom W. Campbell*, for appellant.

*Moore, Burrow & Chowning*, for appellee.

GRIFFIN SMITH, C. J.  We determine whether certain instructions given at appellee's request were erroneous, and whether it was prejudicial for the trial court to hold that counsel for appellant should not interrogate prospective jurors as to insurance affiliations.

Appellant, plaintiff below, was struck by a motorcycle.  He was attempting to cross Victory street (in Little Rock) in front of a street car.  The motorcycle was being operated by Victor Wild, who had a companion with him.  Wild was making a business trip for appellee.  When the accident occurred, the street car was about two-thirds through an intersection.

From satisfactory evidence the jury could have found that appellant undertook to cross in front of the street car while the car was moving; that in doing so he stepped into a position of peril; that Wild was not negligent in failing to anticipate appellant's movements, and that the collision was unavoidable.

There was a verdict for the defendant.

The first assignment of error is that the court improperly ruled that plaintiff's counsel should not interrogate members of the jury panel on the subject of possible insurance affiliations.

The question was, "Do any of you have any business connection with any insurance company writing liability insurance?"

Upon objection being made, the court retired to chambers, and in the absence of the jury the president and the secretary of appellee corporation testified that when the accident occurred there was no liability insurance, but that a policy was procured a few days later. Prior to the accident the two witnesses had discussed advisability of procuring insurance, but they had not contacted or talked with any insurance representative with respect to the subject.

Specifically, the court ruled: "Let the objection be sustained. The court holds that counsel for plaintiff would have the right to ask the jurors what business they are engaged in, without referring to any particular occupation or profession."

Ground for objection was that the plaintiff should not be denied the right to ask whether any of the veniremen was connected with the insurance company which wrote the policy issued subsequent to the injury.[1]

The principle was announced in *Pekin Stave & Manufacturing Company* v. *Ramey*, 104 Ark. 1, 147 S. W. 83, that if counsel for plaintiff, acting in good faith, had reason to believe any of the veniremen was connected with a casualty company insuring the defendant, an in-

---

[1] "The plaintiff objects to the ruling of the court in reference to permitting the plaintiff to have the jurors answer specifically whether they have any business connections with an insurance company writing accident insurance on vehicles or motor vehicles in Little Rock, for the reason that notwithstanding that these defendants have stated that they didn't have any such insurance at the date of this injury, yet they say that they have a policy, for which they were then negotiating, and which was written a few days thereafter. If any venireman in the prospective jury panel is connected with that insurance company the plaintiff ought to know it so that the plaintiff might use a challenge upon such prospective juror. That is all."

quiry directed to a discovery of such fact was proper. Other cases are to the same effect.[2]

In *Baldwin, et al., Trustee for Missouri Pacific Railroad Company* v. *Hunnicutt,* 192 Ark. 441, 93 S. W. 2d 131, it was held that counsel had the right to interrogate prospective jurors to ascertain their names, residence, business, and such other information as would enable counsel to exercise the right of challenge for cause or peremptory challenge without cause.[3] Other Arkansas cases cited by appellant are *Williams* v. *Cantwell,* 114 Ark. 542, 170 S. W. 250, and *Cooper* v. *Kelley,* 131 Ark. 6, 198 S. W. 94. In the Cooper-Kelley Case Mr. Justice Wood, speaking for the court, said: "Questions that are intended to elicit any possible bias or prejudice that the veniremen might have, 'likely to influence his verdict one way or the other,' are always proper."

In the recent case of *Ward* v. *Haralson,* 196 Ark. 785, 120 S. W. 2d 322, an attorney for the plaintiff, in addressing a witness, said, "You went out there representing the state of Arkansas, representing the defendant

---

[2] In the Pekin Stave Company Case the court said: "If counsel for plaintiff honestly and in good faith thinks that any of the veniremen is in any way connected with a casualty company insuring the defendant against loss for the injury complained of in the case, he can ask the jurors on their *voir dire* relative to this. If, however, his real purpose is to call unnecessarily the attention of the jury to the fact of the insurance and thereby to prejudice them against the defendant's rights, then this would be clearly an abuse of this privilege and should be promptly stopped by the trial judge."

[3] A paragraph in the Baldwin Case is: "We think counsel had the right to interrogate the jurors to determine their names, residence, business, and such other information as would enable him to exercise his right of challenge for cause or peremptory challenge without cause. In *Clark* v. *State,* 154 Ark. 592, 243 S. W. 868, we held that a party is entitled to the same latitude in examining a juror to determine whether to exercise a peremptory challenge as when seeking information relative to challenge for cause, subject to the sound discretion of the court. The court not only denied counsel this right, but in doing so—facetiously, no doubt—hurtful, nevertheless—stated that counsel was unfortunate in not knowing the jurors by name, because he did not live in Saline county. The error, however, is the denial of a litigant the right to try to determine, in good faith, by examination on *voire dire,* who and what the jurors are who are to try his case."

and an insurance company, and made those measurements." It was held that this was prejudicial error.[4]

It is our view appellant has not shown that he was prejudiced by the court's refusal to permit counsel to specifically pursue the inquiry regarding the possible interest or non-interest of veniremen in an indemnity insurance company. It is not shown that any venireman was asked what his or her business was, or that an equivocal answer was given. It will be presumed that, under the court's ruling, questions within the latitude accorded were asked, or that counsel elected not to pursue the subject. It is not shown that because of doubt or uncertainty created by any of the answers given, appellant exhausted his peremptory challenges. Peremptory challenge would not have been necessary if responses to the character of questions sought to be asked by appellant had shown the right to challenge for cause, and it is appellant's contention that such showing could not be made because of limitations imposed by the court.

Instruction No. 2 told the jury that "the defendant cannot be held liable for the result of any act or omission of Victor Wild, the result of which could not have been reasonably foreseen or anticipated by Victor Wild."

It is urged that the measure of care contemplated by the law was not what Victor Wild could have foreseen, but what a man of ordinary prudence, in the circumstances, would have anticipated.[5] The instruction is not

---

[4] In the Ward-Haralson Case it was said: "The statement of counsel for appellees, injecting into the case the fact, if it be a fact, that appellants had insurance coverage, was wholly inexcusable, uncalled-for by anything that had previously occurred in the case, and was highly prejudicial. We think the remarks of the court were not sufficient to remove the prejudice, and that a mistrial should have been declared. The obvious and only purpose in making the statement was to advise the jury that an insurance company would have to pay any judgment rendered. This was error."

Instruction No. 2 reads: "You are instructed that the defendant cannot be held liable for the result of any act or omission of Victor Wild the result of which could not have been reasonably foreseen or anticipated by Victor Wild. If you find that the injuries of the plaintiff were sustained in such manner as could not have been reasonably anticipated or foreseen by Victor Wild by the exercise of ordinary care on his part, the plaintiff is not entitled to recover."

inherently wrong.[5] There was only a general objection. Effect of the instruction was merely to tell the jury that liability does not attach to one who, without fault of his own, is precipitated into an unavoidable accident. In *Taggart* v. *Scott,* 193 Ark. 930, 104 S. W. 2d 816, an instruction similar to the one here complained of was given.[6] We there held that, properly construed, the instruction told the jury that ordinary care was required.[7]

The vice urged against instruction No. 14 is that it told the jury that operation of the motorcycle by appellee's employee at an excessive speed, or running the motorcycle past the street car at the intersection in viola-

---

[5] Appellant's argument is: "Victor Wild was a boy whom appellee had employed to make its deliveries. It was enough to render appellee liable if the result of the act or omission of this boy causing the injury to appellant could have been reasonably foreseen or anticipated *by a man of ordinary prudence,* under the circumstances, whether the results of such acts or omissions could have been 'foreseen or anticipated *by Victor Wild'* or not. Appellee had no right to employ a *boy* to make its deliveries over the streets of a populous city on a motorcycle and then have the question of its liability for his acts or omissions turn on whether this *boy* could foresee or anticipate the result of such acts or omissions. Appellant had a right to have appellee's liability depend upon whether *a man of ordinary prudence* could have reasonably foreseen or anticipated the result of such acts or omissions." NOTE: The record as abstracted does not show the age of Victor Wild.

[6] The Taggart-Scott instruction was: "You are instructed that the defendant cannot be held liable for the result of any act or omission, the result of which could not have been reasonaby foreseen or anticipated. And in this case, if you find that the injuries and damage, if any, sustained by the plaintiff could not have been reasonably anticipated or foreseen, by the use of ordinary care by the defendant, the plaintiff is not entitled to recover."

[7] In commenting upon the instruction in the Taggart-Scott Case, this court said: "It is argued that this instruction in effect told the jury that appellant could not recover if it found that the injuries sustained by her in person and to her car could not have been reasonably anticipated or foreseen by appellee's driver. We think, properly construed, the instruction means, and the jury were told, that appellee would not be liable unless injury and damage to appellant or her car could have been, by the exercise of ordinary care, anticipated or foreseen by appellee's driver."

tion of city ordinances, "would not of itself or themselves conclusively establish negligence."[8]

We have frequently held that violation of a state law, or violation of a city ordinance, is merely evidence of negligence, and does not constitute negligence *per se*.[9]

Instruction No. 16 told the jury that the rule of law requiring drivers to exercise care commensurate with the dangers reasonably to be anticipated did not require Victor Wild to anticipate appellant's action.[10] Appellant in-

---

[8] Instruction No. 14: "Even though you believe from the evidence that Victor Wild was operating his motorcycle at an excessive rate of speed just prior to or at the time of the accident or passed the street car then being operated by W. C. Bently under circumstances which constituted a violation of one or more ordinances of the city of Little Rock, you are instructed that such act or acts, if any, of the said Victor Wild, would not of itself or themselves conclusively establish that Victor Wild was guilty of negligence, but such act or acts, if any, may be considered by the jury only for the purpose of determining whether or not Victor Wild was guilty of negligence, and even if you find that Victor Wild did violate one or more ordinances of the city of Little Rock, either with respect to the then speed with which he was operating said motorcycle or the circumstances under which he passed the street car, you must further find, before you find for the plaintiff, that such act or acts, if any, were the sole and proximate cause of the injury."

[9] Instruction No. 16 reads as follows: "If you believe from the evidence that the plaintiff, just before the accident, attempted to cross Victory street, at a point several feet north of the cross-walk which is located on the north boundary of the intersection of Second and Victory streets, and that at the time he made such attempt he was trotting or hurrying across Victory street to cross said street ahead of a northbound street car which then was entitled to the right-of-way over the plaintiff, and that plaintiff's view of the motorcycle then being operated by Victor Wild was obstructed by the street car, you are instructed that the rule of law which requires drivers of motorcycles to anticipate the presence of pedestrians upon the street and to exercise reasonable care to avoid injuring them and which requires such drivers to exercise care commensurate with the dangers reasonably to be anticipated, would not require Victor Wild to anticipate such action, if any, on the part of the plaintiff, and the failure of Victor Wild to anticipate such action, if any, on the part of the plaintiff, would not establish conclusively that Victor Wild was negligent in passing said street car."

[10] *Shipp* v. *Missouri Pacific Transportation Company*, ante p. 104, 122 S. W. 2d 593, and cases therein cited.

sists that it is for the jury to find, in a particular case, whether violation of a safety ordinance constitutes negligence. We think any uncertainty in that part of the instruction to which exception is taken was cured by other language in the same instruction which told the jury that "failure of Victor Wild to anticipate such action, if any, on the part of plaintiff, would not establish *conclusively* that Victor Wild was negligent in passing said street car."

Finally, appellant insists that it was error to give multiple and duplicate instructions at the request of defendant. It is true a great many instructions were given; yet, they are not duplicates. It is better practice to limit instructions to the law applicable to essential subjects of controversy brought out by the evidence, but in the instant case the record does not disclose an abuse of the privilege each side to the controversy had to submit its theory under appropriate instructions.

The judgment is affirmed.

HUMPHREYS and MEHAFFY, JJ., dissent.

MEHAFFY, J. (dissenting). I cannot agree with the majority in holding that the court did not err when it refused to permit appellant's counsel to ask the jurors the following question: "Do any of you have any business connections with an insurance company writing liability insurance?"

In a recent case the attorney said: "I want to know if any of the jurors are employed by liability insurance companies, or engaged in the insurance business, or employed in the insurance business?" Objection was made to this question and exceptions saved, and this court said: "The question propounded by counsel for appellant was a proper one in order that he might intelligently exercise appellant's right of challenge. *Smith Ark. Traveler Co.* v. *Simmons,* 181 Ark. 1024, 28 S. W. 2d 1052. That question was very much like the question in this case.

A party in a civil case not only has the right to challenge for cause, but each party has three peremptory challengers, and has as much right to get information so that he can intelligently make those challenges as he

has to trial by jury. The refusal of the court in this case to permit the question to be asked absolutely denied the appellant the right to ascertain whether any of the jurors had any business connection with the insurance company writing liability insurance. He certainly had a right to know this in order to intelligently exercise his right to a peremptory challenge. To permit appellant to ask what business the members of the jury were engaged in does not give him the information that he seeks and which he had a right, under the law, to have.

Again this court said recently, when counsel asked the jurors if any of them were interested in any liability insurance company for protection against automobile accidents:

"It is argued that the only purpose of asking the question was to leave a false impression upon the minds of the jurors that appellant was protected by insurance against the accident, so that they would the more readily return a verdict in favor of appellees. The argument is not supported by the record. In answer to a question asked by the court, counsel for appellees stated that the question was propounded to obtain information. They were entitled to the information in order to intelligently exercise their right of challenge under the rule announced in the case of *Smith Ark. Traveler Co.* v. *Simmons,* 181 Ark. 1024, 28 S. W. 2d 1052." *Bourland* v. *Caraway,* 183 Ark. 848, 39 S. W. 2d 316.

This court, in another case, said: "In this case only one juror was questioned as above indicated, and there was nothing in the record to disclose that counsel for appellee was not acting in good faith in asking the questions to determine whether the juror had any bias or prejudice for or against either party." *Ellis & Lewis* v. *Warner,* 182 Ark. 613, 32 S. W. 2d 167.

In another case this court said: "Questions that are intended to elicit any possible bias or prejudice that the veniremen might have 'likely to influence his verdict one way or another' are always proper, and the rulings of the trial court in permitting such questions will never be dis-

turbed unless there is a manifest abuse of its discretion. The questions propounded to the veniremen in the instant case in and of themselves were not objectionable, and the record does not disclose anything in the conduct of the attorney in the manner of propounding the questions, or other conduct on his part aside from this, that was calculated to cause the jury to believe that the defense was actually being conducted in the interest of some casualty insurance company instead of those who were named and who appeared as defendants at the trial.'' *Cooper* v. *Kelly,* 131 Ark. 6, 198 S. W. 94.

Again this court said: ''The authority of the attorney and the duty of the trial court in such matters was recently considered by this court in the case of *Pekin Stave & Mfg. Co.* v. *Ramey,* 104 Ark. 1, 147 S. W. 83, in which case Mr. Justice Frauenthal, speaking for the court, said: ''If counsel for plaintiff honestly and in good faith thinks that any of the veniremen is in any way connected with a casualty company insuring the defendant against loss for the injury complained of in the case, he can ask the jurors on their *voir dire* relative to this.'' *Williams* v. *Cantwell,* 114 Ark. 542, 170 S. W. 250.

''The privilege of such questioning by the defendant for peremptory purposes should not be denied.

''The right to challenge peremptorily is sacred and valuable; and the exercise of it does not rest upon any legal qualification of the juror, but it may be exercised by the defendant for any peculiar reason, or no reason, and without legal cause.'' *Funches* v. *State,* 125 Miss. 140, 87 So. 487.

''In civil cases it is said that peremptory challenges are allowed to protect parties, not so much from the bias or prejudice which might arise in the mind of a juror from personal dislike or hatred of those who might happen to be plaintiffs or defendants in the action, but rather that which might relate to or grow out of the subject-matter in controversy.'' *State* v. *Skinner,* 34 Kan. 256, 8 Pac. 420.

Again this court said, when the attorney asked the jurors if any of them were represented by a certain firm

of lawyers, and objection was made and overruled by the court: "There was no error in this ruling. Counsel had the right to have this information in determining what peremptory challenges he should exercise." *Anderson* v. *Erberich,* 195 Ark. 321, 112 S. W. 2d 634.

The right to challenge peremptorily, as said by the Mississippi court, is "sacred and valuable." It is as sacred as the right to trial by jury because, if attorneys are not permitted to examine jurors for the purpose of getting information in order to determine what peremptory challenges they shall make, the jury may be composed partly of persons who could not and would not give the party a fair and impartial trial. Besides, our statute provides, in addition to challenges for cause: "Each party shall have three peremptory challenges, which may be made only orally." Section 8343, Pope's Digest.

It would be absurd to give a party the right to peremptory challenges and then not permit him to ask questions to determine what peremptory challenges he wished to make. Some of our cases hold that the questions by the attorney must be asked in good faith. I think the attorney has the right to the information without regard to what his motive is. Of course, the trial court would have the right to prevent any attorney from doing anything that would create prejudice in the minds of the jurors.

Section 8312 of Pope's Digest provides that jurors must be of good character, of approved integrity, sound judgment, and reasonable information, qualifications that are not required of a judge. I do not think jurors are any more subject to influence, bias, or prejudice, than we are, and there is not a scintilla of evidence in this record that the attorney for the appellant did or said anything that had any tendency to create bias or prejudice in the minds of the jurors. There may be a few lawyers that would act in bad faith, but from my experience in the trial of lawsuits for forty years, I am thoroughly convinced that the great majority of lawyers on both sides, as well as the great majority of jurors, act uprightly and would not resort to any practice not justified.

Since there is no evidence to indicate that the attorney in this case did anything improper, it is our duty to hold. that he did not; and in judging his conduct, or the conduct of any attorney in the trial of a lawsuit, we should put ourselves in his place, because: "We are apt to be selfish in all our views, in this jostling, headlong race, and so to be right, before you censure a man, just put yourself in his place."

It is said in the majority opinion that it does not appear that any prejudice resulted to appellant. It does appear, however, that he was deprived of a sacred right, and in such cases prejudice is conclusively presumed. If one was being tried for murder and the court should conclude that the jury was prejudiced and might base their verdict on conjecture and speculation, and for that reason discharged the jury and tried the case himself, when the case came to this court on appeal there would be no more prejudice appearing than there is in this case, but no one would hesitate for a moment to declare the conduct of the judge improper, and reverse the case. I think that is what we should do here.

Mr. Justice HUMPHREYS agrees with me in the view herein expressed.