DeLong v. Green.

5-1538                                          313 S. W. 2d 370

Opinion delivered May 26, 1958.

*McMillan & McMillan* and *Otis H. Turner,* for appellant.

*H. B. Means,* for appellee.

GEORGE ROSE SMITH, J. On November 15, 1956, Phillip Green, aged nineteen, was killed in a collision between the car he was driving and a car owned by the appellant Garrett and being driven by the appellant DeLong. This action for wrongful death and property damage was originally brought by the decedent's parents, Forace and Elvie Green. Later on Forace Green was appointed administrator of his son's estate and in that capacity intervened as a plaintiff in the action. Upon trial before a jury the plaintiffs recovered a judgment for $23,061.47, of which $20,000.00 was awarded by the jury for the mental anguish suffered by the parents.

The principal argument for reversal concerns certain references to an insurance company that were made during the selection of the jury. Mr. Means, representing the plaintiffs, had stated that he proposed to ask the veniremen if any of them owned stock in the Southern

Farm Bureau Casualty Insurance Company. Mr. McMillan, representing the defendants, informed the court that the company in question was in fact insuring the defendants in the case. He further stated that, "as far as our information is concerned, we have no knowledge of anybody in Hot Spring county, and particularly on this jury, that has any stock in this corporation." He went on to say that there was a conflict in the county between the farmers supporting the Farm Bureau and those supporting the Farmers Union, both of which had insurance companies, that at least two members of the jury were decidedly biased against the Farm Bureau, and that to indicate that the Farm Bureau was a defendant would affect those men. Mr. McMillan requested that the questions be limited to a reference to insurance companies in general, and, if any juror answered in the affirmative, that he then be asked to name the particular company. "In this way," Mr. McMillan pointed out, "Mr. Means can obtain his information without disclosing the name of the insurance company."

Mr. Means insisted, however, that he was entitled to ask the jurors about the particular company. The trial court sustained this contention, and Mr. Means then asked the veniremen four separate questions about their ownership of stock in, or their agency for, the Southern Farm Bureau Casualty Insurance Company. No juror gave an affirmative answer to any of these questions.

On some fifteen occasions we have considered the matter of questioning prospective jurors about their connection with insurance companies. The difficulty, which has made the issue a recurring one, is that of laying down a rule that will operate with fairness to both sides in the litigation. On the one hand, the plaintiff's attorney is undoubtedly entitled to elicit information that may assist him in the exercise of his peremptory challenges. As we said in *Dedmon* v. *Thalheimer*, 226 Ark. 402, 290 S. W. 2d 16: "If counsel, in good faith, thinks that liability insurance is involved, then he may ask questions calculated to bring to light any bias or prejudice a venireman may have for or against insurance com-

panies . . . A lawyer trying a case would be rather careless if he failed to ascertain as well as possible if any one on the venire was biased or prejudiced on a question involved in the litigation, even though such question would be only indirectly involved.''

On the other hand, the fact that the defendant is insured has no bearing on the issue of negligence, and since that knowledge, as we have repeatedly held, may prejudice the jury, it is improper for the questions on *voir dire* to be used as a means of unnecessarily calling the jury's attention to the fact of insurance. *Pekin Stave & Mfg. Co. v. Ramey,* 104 Ark. 1, 147 S. W. 83. Judge Frank Smith, in writing the court's opinion in *Williams* v. *Cantwell,* 114 Ark. 542, 170 S. W. 250, had this to say: ''. . . appellee's attorney appears to have known, not only that Mr. Wynne did represent an insurance company, but to have known the particular company which he represented, and his speech before the court, as well as his questions to the jurors, appears to us to have unnecessarily advised the jurors of the fact that appellant was insured against liability and that he would not be required to pay any verdict which they might render against him. Information as to any juror's connection with any insurance company could have been obtained in a less dramatic manner by asking each of the jurors if he represented or was connected with any casualty company insuring employers against liability, or if he was connected with any insurance company, or any other proper question which might have tended to disclose whether any juror had any bias or prejudice likely to influence his verdict one way or the other; and had any juror answered that he was so connected with any such insurance company it would not have been improper to have permitted a more minute inquiry of such juror. But no such necessity appears to have existed in this case, and the purpose and effect of counsel's remarks addressed to the court and his questions to the jurors appear to have been to advise the jury that appellant was insured against liability in the Home Life and Accident Insurance Company and

would not have to pay any judgment for damages which they might render against him.''

In the case at bar it cannot be said that counsel's unquestioned right to information about the veniremen necessarily required that the Southern Farm Bureau Casualty Insurance Company be referred to by name. Opposing counsel, whose good faith in the matter is not questioned, had declared that the farmers in the county supported two rival organizations, that at least two members of the panel were decidedly biased against the Farm Bureau, and that to refer to that company would have a prejudicial effect. He went further and pointed out, much as Judge Smith did in the *Williams* case, how the desired information might have been obtained by general questions. Despite this warning plaintiff's counsel insisted upon naming the company and did so in four questions to the jury. It can hardly be supposed that a group of intelligent jurors did not draw the inference that the Southern Farm Bureau Casualty Insurance Company had insured the defendants, since that company was singled out in counsel's repeated inquiries on the subject. Had there been no alternative way of examining the venire no doubt the plaintiffs' right to information would have overridden the defendants' objection; but there was an alternative, which the plaintiffs refused to adopt.

We are aware that in three instances we have affirmed judgments even though a specific insurance company was mentioned during the selection of the jury. *Ellis & Lewis* v. *Warner,* 182 Ark. 613, 32 S. W. 2d 167; *Halbrook* v. *Williams,* 185 Ark. 885, 50 S. W. 2d 243; *Lewis* v. *Cox,* 187 Ark. 1163 (mem.), 58 S. W. 2d 215. We emphasize, however, that those precedents do not justify the procedure which was permitted in this instance and that the present judgment would have to be reversed regardless of what rule might be established for the future. In none of the cases just cited was there a suggestion, as there is here, that to name the company would be peculiarly prejudicial; nor was it insisted in the earlier cases that the desired information be elicited by gen-

eral questions. In order to affirm this judgment we should have to go far beyond any prior case, by saying flatly that counsel has an unqualified right to name the particular insurer even though the record shows that the reference will have an especially prejudicial effect upon the jury and even though the needed information can equally well be obtained in a way that involves no such unfair advantage for either side. That view is not supported either by our earlier decisions or by the simplest notions of fair play.

We could, of course, end our discussion at this point, leaving for future determination a host of minute and finely drawn distinctions that would undoubtedly be urged in later cases. The bench and bar, however, are entitled to an expression of our views, especially if that course may reduce an area of uncertainty and thereby avoid needless appellate litigation. We therefore think it best to announce our preference for the procedure that is at once the simplest to follow and the fairest to both sides in the lawsuit: Questions about the veniremen's insurance connections should refer only to insurance companies in general; a particular company should not be named when the information wanted can just as well be obtained by the use of general questions.

In the present case it is also contended that the plaintiffs' references to the Southern Farm Bureau Casualty Insurance Company were offset by the fact that the defendants were allowed to ask the jurors about their possible connection with the Emmco Insurance Company. The latter inquiry was plainly permissible, however, as the Emmco Insurance Company was actually a party to the case, having intervened to assert a subrogation claim for the damage to the Green car.

Several other asserted errors are argued in the briefs, but for the most part they are of a kind not apt to arise upon a retrial and need not be discussed. One matter, however, should be mentioned. Over the defendants' objection the court permitted the jury to return separate verdicts for the mental anguish suffered by the father and that suffered by the mother. The case was tried un-

der Act 115 of 1949, which allows the personal representative to recover for mental anguish sustained by the parents of the decedent and which directs that the recovery be distributed in the proportion provided by law for the distribution of personal property left by persons dying intestate. It is insisted that the court should have required the jury to return a single verdict in favor of the administrator for the total mental anguish undergone by both parents.

Without deciding the merits of this contention we point out that Act 115 was repealed by Act 255 of 1957, which by its language is applicable to all actions for wrongful death, whether arising before or after the effective date of the 1957 statute. Ark. Stats. 1947, §§ 27-906 *et seq.* The new act provides that the apportionment of the damages shall be made by the jury at the request of any beneficiary or party. Ark. Stats. § 27-909. We regard this as essentially a procedural change, since the substantive right to collect damages for wrongful death is continued in force, with a change in the procedural method by which the distribution of these damages is to be determined. The 1957 act will therefore be controlling upon a new trial, under the rule that procedural changes apply to pending cases. *Foster* v. *Graves*, 168 Ark. 1033, 275 S. W. 653.

Reversed.

McFADDIN, MILLWEE, and ROBINSON, JJ., dissent.

SAM ROBINSON, Associate Justice, dissenting. The majority holds that before a venireman can be questioned concerning his interest in or connection with a particular liability insurance company, he must first be questioned with reference to whether he has any interest in or connection with *any* liability insurance company. As support for the rule only two cases are cited: *Pekin Stave & Mfg. Co.* v. *Ramey*, 104 Ark. 1, 147 S. W. 83, and *Williams* v. *Cantrell*, 114 Ark. 542, 170 S. W. 250. The majority quotes Judge Frank Smith extensively from *Williams* v. *Cantrell*.

*Cooper* v. *Kelly*, 131 Ark. 6, 198 S. W. 94, was decided by practically the same court that decided *Williams* v.

*Cantrell.* Judge Frank Smith, who wrote the opinion in *Williams* v. *Cantrell,* helped make the opinion in *Cooper* v. *Kelly,* which was written by Judge Wood. In *Cooper* v. *Kelly,* the attorney representing the defendant refused to give the name of the insurance company carrying the indemnity insurance. The Court said: "... counsel for the appellee, over the objection of the appellants, asked one juror on his *voir dire* whether or not he represented any accident or casualty insurance company, to which question the juror answered, 'No.' And appellee's counsel asked another juror whether or not he was under any obligation to any accident insurance company or was the agent of any such company. The juror answered, 'No.' And other jurors were asked, 'Do you know of any accident company or any agent of any such company that has any influence or control over you in the city of Hot Springs?' to which they answered, 'No.' And another juror was asked whether he knew that parties in public business were insured against accidents that occurred, and the juror answered, 'Yes.' Then the juror was asked, 'Do you know of any insurance company or casualty company or any agent of such company, in Hot Springs or anywhere else, to whom you are under obligations?' And the juror answered 'No.' Still another juror was asked, 'Do you know any of these accident casualty companies?' and the answer was, 'Know all of them, I suppose.' Question, 'They haven't any hold on you? Answer, 'None that I know of, nobody else.' "

In holding that it was not error for the trial court to permit questioning of the veniremen as above indicated, the Court said: "... In both of those cases [referring to *Pekin Stave & Mfg. Co.* v. *Ramey* and *Williams* v. *Cantrell*] it is expressly recognized that it is within the province of an attorney representing a plaintiff to question veniremen concerning their relation to *any casualty company whom the attorney might know or might honestly believe to have insured the defendant against loss for the injury which the plaintiff had sustained at the hands of the defendant.*

"Had nothing more occurred in the above cases, relied upon by the appellants, than the mere asking of the questions therein propounded, doubtless this court *would not have condemned as erroneous and prejudicial the rulings of the trial court in permitting such questions. Doubtless counsel for appellees in the instant case were permitted a broad scope of inquiry concerning the veniremen's connection with any casualty insurance company in Hot Springs or elsewhere by reason of the conduct of the appellant's counsel in refusing to discover whether or not he represented any casualty company, and, if so, in refusing to divulge the name of such company. Had such information been given to appellee's counsel, we may assume that the court would have restricted the inquiry accordingly.*" [Emphasis supplied]

From the above language of the Court in *Cooper* v. *Kelly*, construing *Pekin Stave & Mfg. Co.* v. *Ramey* and *Williams* v. *Cantrell*, it appears that the proper way for an attorney to question a venireman in regard to any interest in or connection he may have with an insurance company that is the real party in interest in the lawsuit then being tried is to question such venireman with reference to his connection or interest in the particular insurance company involved, and not just any insurance company.

Later, when Judge Frank Smith was still on the Court, Judge McHaney wrote *Ellis & Lewis* v. *Warner*, 182 Ark. 613, 32 S. W. 2d 167, where it is pointed out that in *Cooper* v. *Kelly* that case was distinguished from *Pekin Stave & Mfg. Co.* v. *Ramey* and *Williams* v. *Cantrell.* Judge McHaney said, in *Ellis & Lewis* v. *Warner,* that according to the rule in *Pekin Stave & Mfg. Co.* v. *Ramey* and *Williams* v. *Cantrell,* the attorney for the plaintiff has the right to question a venireman concerning his relation with any casualty company whom he might have reason to believe was interested in the outcome of the litigation.

As I see it, *Pekin Stave & Mfg. Co.* v. *Ramey* and *Williams* v. *Cantrell* do not support a rule to the effect

that counsel seeking to ascertain if a venireman has an interest in or connection with an insurance company which is one of the real parties in interest must first ask the venireman about his connection with *any* insurance company. In fact, according to the construction put on those cases in *Cooper* v. *Kelly* and *Ellis & Lewis* v. *Warner*, the rule appears to be just the opposite, that is, if counsel knows, or has good reason to believe, that a certain insurance company is one of the real parties in interest, and in good faith wants to know if a prospective juror has any connections that would make him an undesirable juror in the opinion of counsel, then the venireman should be asked about that particular insurance company, and not just any insurance company.

The majority states that "Mr. McMillan, representing the defendants, informed the court that the company in question was in fact insuring the defendants in the case. He went on to say that there was a conflict in the county between the farmers supporting the Farm Bureau and those supporting the Farmers Union, both of which had insurance companies, that at least two members of the jury were decidedly biased against the Farm Bureau, and that to indicate that the Farm Bureau was a defendant would affect those men." In these circumstances it was of the utmost importance that counsel for plaintiff learn, if possible, whether any of the veniremen were biased in favor of the Southern Farm Bureau Insurance Company, since that company was the real party in interest on the defense side of the case. Counsel for defendant knew there were two veniremen who were prejudiced against that insurance company. Apparently counsel for plaintiff had no information on the subject, but if there were two veniremen prejudiced against the insurance company, by like token there could be two or more who were biased in favor of the insurance company. A careful trial lawyer representing the plaintiff in all probability would not want a person on the jury where liability insurance was involved if such person had a close relative who worked for any liability insurance company.

In *Halbrook* v. *Williams,* 185 Ark. 885, 50 S. W. 2d 243, counsel for appellant asked all the members of the panel if they had "any connection or relationship with the Standard Casualty & Surety Company of New York"; and, further, if they "had such relationship with any such company or any surety company that insures persons against liability".

In affirming the trial court in permitting these questions to be asked on *voir dire* examination, this Court said: "The jurors or some of them might have had some relationship or connection with the particular company mentioned or some other surety company so as to make them undesirable jurors, and still not have been connected with any agency or held any stock in the particular company. We have many times held that similar questions may properly be asked the veniremen for the purpose of intelligently exercising the right of challenge. *Smith-Arkansas Traveler Co.* v. *Simmons,* 181 Ark. 1024, 28 S. W. 2d 1052; *Ellis & Lewis* v. *Warner,* 182 Ark. 613, 32 S. W. 2d 167; *Bourland* v. *Caraway,* 183 Ark. 848, 39 S. W. 2d 316; *Sutton* v. *Webb,* 183 Ark. 865, 39 S. W. 2d 314. No error was committed, therefore, in this regard."

The trial court has wide discretion regarding the scope of the *voir dire* examination and in my opinion there was no abuse of that discretion in the case at bar.

For the reasons set forth herein, I respectfully dissent.

I am authorized to say that Mr. Justice McFADDIN joins in this dissent.