## L. R. & F. S. Railway v. Townsend, Ad.

1. RAILROADS: *Action by administrator for death of intestate.*
The act of February 3, 1875, gives to the administrator the right to recover damages for the negligent killing of his intestate by a railroad train; and the amount recovered becomes a part of the personal assets of the deceased, to be distributed according to the administration laws of the State.

2. INSTRUCTIONS: *Inapplicable to the evidence.*
Instructions inapplicable to the facts proved, and calculated to mislead the jury, or based upon unproved hypotheses, should not be given.

3. RAILROADS: *Brakeman: Rights and risks.*
A brakeman assumes all risks necessarily incident to his employment; and to give him a right of action against the company for injuries sustained in its service, the company must have owed him some duty, arising from contract or from the relation itself; and the failure to perform that duty must have been the proximate cause of the injury.

APPEAL from *Pulaski* circuit court.
Hon. JOHN FLETCHER, Special Circuit Judge.

*Clark and Williams* for appellant.

An employe assumes the risks naturally incident to the business he engages to perform, and if he knows of defects in tools, machinery, or incompetency of co-servants, etc., and continues knowingly to use such tools, or in connection with such incompetent servants, he assumes the risk, etc. *5 Ohio, 78; Wood on Master and Servant, secs. 326,*

Little Rock & Fort Smith Railway v. Townsend, Ad.

419; 106 Mass., 282; 88 N. Y., 264; 55 Texas, 110; 74 Ind., 440; 55 Iowa, 671; 45 Mich., 212; 7 Ill., App. 130; 14 Cent. L. J., 178–9; Underhill on Torts, 57–8.

There is no evidence connecting the injury with a culvert, nor that the culvert was defective, or unfit for the purpose for which it was intended, or if it was, it was patent and well known to deceased. Wood on Master and Servant, secs. 326–8, 335; 17 Cent. L. J., 97–8; Ib., 118.

2. There is no cause of action set out in the complaint. An administrator as such cannot recover damages for the death of his intestate for the benefit of his estate, to be used as assets to pay debts and be distributed to the heirs as general assets. 3 Sutherland on Damages, 282; Acts 1875, secs. 1 and 3; 33 Ark., 350; 17 Cent. L. J., 32; 26 Ind., 477; 23 N. Y., 465; 18 Q. B., 93; 66 Penn. St., 393; 30 N. J. L., 188; 57 Penn. St., 335; 45 Cal., 323; 28 Wis., 522.

When there is no surviving relative or persons of the class named in the statute, the action cannot be maintained. Shear. & Red. on Neg., sec. 297; Stafford v. Drew, 3 Duer., 627; 21 Barb. 245.

There can be no action without some allegation and proof of actual damage or pecuniary loss to some one caused by the death.


Collins and Balch for appellee.

1. There is evidence to support the finding of the jury, and this court will not disturb their verdict. 34 Ark., 350; 37 Ill., 194, 581; 33 Id., 756; 31 Id., 165.

2. The right of action in case of the death of an adult is expressly given to the legal representative by sec. 3, Act Feb'ry 3, 1875, and Gantt's Dig., sec. 4,760.

3. As to the risks assumed by an employe, the duties of the master to furnish suitable means and agencies for the

due conduct of the business, in the selection of which he shall use due care, etc., and the question of contributory negligence, and of notice of defects by the servant, see *Baker, et al. v. Allegheny Valley R. R., Nov., 1881, Am. Law Reg.; 110 Mass., 241; 49 N. Y., 521; 15 Wall, 401; 7 H. & N., 937; 4 Met., 49; 3 M. & W., 1; 3 Macf. H. L. Cas., 288; 35 Law T. Reg, Exch., 477; Sher. & Red. on Neg., sec 96; 62 Mo., 38; 76 Pa. St., 389; 20 Minn., 9; 38 Wis., 289, 25 N. Y., 562; Ib., 521; 53 Id., 49; 59 Id., 519.*

Railroads are bound to use due care in seeing that their cars and road bed are maintained in a reasonably safe condition, and when an employe in the proper discharge of his duty is injured from a failure to perform this personal duty, it is liable. *10 Otto Haugh v. Tex. R. R.; 17 Wall, 557; 3 Dillon, 319; 46 Mo. 163; 59 Penn. St., 239.*

Railroads are liable for injuries to employes caused by the rottenness or want of repair in its road-bed. *59 Penn. St., 239; 8 Allen (Mass.) 441; 10 Ind., 554; 11 Ind., 38.*

4. As to the damages recoverable in such cases, see *Field on Dam., sec. 627 et seq.; Sher. & Red. on Neg., 290 to 301; L. R. 8 Exch., 24; 41 Ga., 223; 18 Iowa, 280; 18 Q. B., 93; Moak's Underhill on Torts, Rule 22, sec. 4, p. 80; 3 H. & N., 211; 55 N. Y., 592; 40 Miss., 374; 36 Cal., 590.*

SMITH, J. This action against the railway company was brought by John D. Townsend, who sues as administrator of John Willette, deceased.

The complaint alleges, in substance, that on and before the tenth day of October, 1881, John Willette was in the employ of defendant company as brakeman on one of their trains of cars.

That defendant's railway, in the town of Conway, in

Faulkner county, was in a defective, unsafe and dangerous condition in this, that a culvert in the track in said town of Conway was left uncovered, and the cross-ties over the same had become rotten and unfit for use. That the company, in wanton disregard of their duty, well knowing of such defects, continued to run their trains over such defective road, and to require their employes, among whom was the said John Willette, to operate their trains, and to couple and uncouple cars over such defective road after the company had notice of such defects.

That said John Willette, while engaged in the performance of his duties as such brakeman, under his contract, by direction of defendant, without fault on his part, and while coupling and uncoupling cars on said road in said town of Conway, was, by the breaking and giving way of a part of said roadway over the said culvert, thrown into the said culvert and run over by defendant's cars, and then and there, by defendant's willful and gross negligence, wounded, cut and bruised, and from the effects of the same, afterwards, on the tenth day of October, 1881, died.

That said Willette was an adult and unmarried at the time of his death.

The damages were laid at $10,500.

The defendant admits the injury by which the deceased lost his life, but denies that it occurred in the manner stated, or through any defect of road-bed or culvert, or on account of any culvert being uncovered, or rotten ties, or through or on account of any negligence or want of care on the part of defendant in the use of proper road-bed or tools or machinery, or in the selection of servants or employes, or on account of any other negligence or fault of the defendant, but alleges that he came to his death by unavoidable accident, or by and on account of his own carelessness, or the risks incident to his employment.

The jury gave the plaintiff a verdict for $3,910, which included $110 funeral expenses.

1. RAIL-ROADS: Actions against by administrator for death of deceased.

A motion to arrest the judgment was overruled. It is now contended that the judgment should have been arrested because the complaint does not show that the deceased left any relations who were injured by his death, and that his administrator cannot maintain an action for such a cause for the general benefit of the estate. It is insisted that causing the death of a man does not damage his estate, and that, damages being the substance of the action, in the nature of things, if there be no damage, there can be no right of action.

In the absence of a statute this contention would be correct. For an injury resulting in death the common law gave no action to any one. But at the time of Willette's death the following statutory provisions were in force:

. *Gantt's Digest, sec. 4,760:* " For wrongs done to the person or property of another, an action may be maintained against the wrongdoers, and such action may be brought by the person injured, or after his death by his executor or administrator against such wrongdoer * * * * in the same manner and with like effect in all respects as actions founded on contracts."

*Act of February 3, 1875, sec. 1:* " All railroads which are run, or may be hereafter built and operated in whole or in part in this State, shall be responsible for all damages to persons and property done or caused by the running of trains in this State."

*Sec. 3:* " When any adult person be killed by railroad trains running in this State, the husband may sue for damages to a wife. In all other cases the legal representative shall sue."

. Since the present appeal was taken, our legislature has enacted another law, requiring compensation to be made for causing death by a wrongful act, neglect or default, modeled

Little Rock and Fort Smith Railway v. Townsend, Ad.

after Lord Campbell's "act for compensating the families of persons killed by accidents" (*August 26, 1846, 9 and 10 Victoria, c. 93*). It provides that the action shall be brought in the name of the personal representatives of the deceased, or if there be none, then by his heirs at law ; and the amount recovered shall be for the exclusive benefit of the widow and next of kin ; and that the damages are to be estimated with reference to the pecuniary injuries resulting from such death to the wife and the next of kin.    Under similar statutes elsewhere it has been ruled that the exist- ence of persons entitled to the amount recovered is essen- tial to a recovery, and must be alleged in the declaration and proved on the trial ; and that the measure of damages is the pecuniary injury suffered by the person or persons for whose use the action is prosecuted.    And the judgment, though recovered in the name of the personal representa- tive of the deceased, does not become assets of the estate. The relation of the administrator to the fund, when recov- ered, is not that of the representative of the deceased, but he is a mere trustee for the widow and next of kin.    *Pierce on Railroads, Ed. 1881, p. p. 392–3* and cases cited in notes ; *Dennick v. Railroad Co., 103 U. S. 11* ; *Perry v. St. Joe & W. R. Co., 29 Kans., 420.*

But the act of March 6, 1883, having become a law since the casualty here complained of, has no bearing on this case.    And since all of the arguments of the appellant's counsel against the administrator's right to sue for the ben- efit of the estate are drawn from the construction placed by the courts upon Lord Campbell's act and similar stat- utes, we might dismiss this branch of the case without fur- ther remark.    We will say, however, that although the *Act of February 5, 1875*, is crude, loosely drawn and im- perfect, yet its meaning is not obscure.    It gives to the le- gal representative, that is, to the administrator, the right to recover damages for the negligent killing of his intestate

by a railroad train.    And the amount recovered is a part of the personal assets of the deceased, and takes the direction given them by the law; that is to say, one-third of the amount is to be distributed to the widow, if there be any; then creditors are to be paid in full or *pro rata*, according to circumstances; and the surplus, if any, goes to the next of kin in the proportion provided for in the distribution of personal property under the statute.

Now as a question of power, it is just as competent for the legislature to provide that the fruits of such a judgment shall be assets in the hands of the administrator, as it is to provide that they shall be distributed to the widow and next of kin.    The authority of the legislature in the regulation of legal remedies is supreme.   And the difficulty as to the proper measure of damages is one which is inherent in the subject and is as great whether the action be for the benefit of the estate in general, or for the benefit of the widow and next of kin; or if there is a difference, it is a difference only in degree. The same difficulty presents itself where a person is wounded by the negligent operation of a train, and the action is in his own name.   "There can be no fixed measure of compensation for the pain and anguish of body and mind, nor for the loss of time and care in business, or the permanent injury to health and body.   So, when the suit is brought by the representative, the pecuniary injury resulting from the death to the next of kin is equally uncertain and indefinite. If the deceased had lived, they may not have been benefited, and if not, then no pecuniary injury could have resulted to them from his death.   So, when the action is for the benefit of his estate, it is possible that, if the intestate had not been killed, he might, nevertheless, not have lived long, or he might have become a cripple, or an invalid, and incapable of earning anything, or if he had lived to old age, might never have accumulated any property.    The statute

seems to proceed on the idea that, "if the person injured had survived and recovered, he would have added so much to his personal estate, which the law, on his death, if intestate, would have passed over" to his personal representative to be administered according to law. "In case of his death by the injury, the equivalent is given by a suit in the name of his representative." In all the cases put, it is difficult to get at the pecuniary loss with precision or accuracy, and, in all, the result must be left to turn mainly upon the sound sense and deliberate judgment of the jury. *Railroad Company v. Barron, 5 Wall., 90.*

In connection with the power of the legislature to prescribe the mode of proceeding to compel the wrong-doer to make compensation for a fatal injury to those who are directly interested in the life of a person wrongfully killed, we notice that in Massachusetts, Maine and New Hampshire, the remedy is by prosecution on behalf of the State, in form, criminal, for the recovery of a fine, to be distributed among certain relatives of the deceased. *Pierce on Railroads, 387,* where the Massachusetts' statute is copied in extenso.

The act February 3rd, 1875, sets a value in money upon the life of a human being, and for its wrongful or negligent deprivation by a railroad corporation, gives a right of action to the administrator, who represents, collectively, all who were interested in the continuance of that life, whether as wife, as creditor, or as distributee.

II. The defendant also moved the court below to grant it a new trial, because the verdict was without evidence to sustain it, and was contrary to law and the instructions of the court, and for misdirection of the jury, and for excessive damages. The evidence tended to show that Willette was a brakeman, attached to one of the company's freight trains ; that he had been in its employment for two and one-half months, and that his business was to couple and uncouple cars, and to stop the train. He was twenty-

five years old, was sound and healthy, as we learn from the testimony of his father, and his wages were two dollars and fifty cents per diem. He met his death at Conway station on a dark and rainy night. The train hands were switching some cars from the side track to the main track. When the cars were got upon the main track, he was told by the conductor of the train to cut off four of them. In the act of doing this he fell under the wheels and was run over. No witnesses knew what caused him to fall under the wheels. A fellow-brakeman who was nearest to him and the first to reach him after his fall, died before the trial. The conductor, who was the next person to go to him, did not see him when he fell.

But it was the plaintiff's theory that his intestate got down between the two cars to pull out the coupling-pin, and the train starting to move backwards, he placed his foot on a cross-tie, which, on account of its age and rottenness, broke under his weight and precipitated him under the wheels. All the evidence that can be found in the record to support this theory is, in substance, as follows : There was an open or uncovered culvert one hundred and fifty yards from the depot, eight feet wide and two or three feet deep, made to drain off the waters of the surrounding country. Between the rails a plank ten or twelve inches wide spanned the culvert. The cars which Willette was required to uncouple were standing on this culvert. Next morning the coroner, in examining the spot, found, at the bottom of the culvert, a piece of sap wood that had scaled off the edge of a tie. This piece of wood was between nine and twelve inches long. and one or two inches thick. There was dirt on the tie or on the piece of wood and the appearance of something having pressed down the piece off the tie, but no impression of a man's foot. There was no evidence that this tie was rotten except the sap surface.

This is a slender thread to hang a verdict upon, which, in

order to stand, must be based upon affirmative proof of the company's negligence. No connection is shown between the alleged defect in the culvert and Willette's death. Several persons—it is impossible to say how many, but certainly those who came and removed the body—had been around and about the spot, any one of whom might have kicked off this fragment of decayed wood, as well as Willette. The fact that the culvert was uncovered is not *prima facie* proof of negligence, since the legislature has not required them to be covered, nor is it customary to cover them, nor is its open condition proved to have had any relation to the injury complained of. If Willette had slipped into the culvert the cars would probably have mutilated his body or legs, but such was not the case.

The court gave the following amongst other directions:

"If the jury believe from the evidence and circumstances of this case that plaintiff's intestate was killed by reason of defective and decayed cross-ties over a culvert on the road of defendant, when it was necessary for the deceased and other employes of defendant, frequently to pass in coupling and uncoupling cars, and that said defendant railroad company, through its agents, knew of said defect, or might have known by the use of ordinary care or diligence; and if the jury find further, that said cross-tie was so defective or decayed as its use would naturally and reasonably be dangerous, they should find for plaintiff, unless they also find that said intestate was also in fault at the time of the accident, and by reason of his fault contributed to the injury; or that he knew that the cross-tie was decayed or defective, or ought by ordinary care to have known it, and that the defects were of such a nature as would induce him reasonably to foresee what might endanger his safety.

"If there was a culvert at the place at which deceased was killed, and over which the deceased or other employes of defendant had frequently to pass in coupling

2. INSTRUCTION: Inapplicable to evidence.

and uncoupling cars, it was the duty of defendant to exercise ordinary care in the construction and maintenance of such culvert to protect the employes of defendant from accident. And if the jury find from the evidence that defendant failed to exercise ordinary care in the construction and maintenance of said culvert, and that deceased was thrown down by reason of the defects in said culvert and killed by the cars, they will find for the plaintiff, unless they also find that such defects were known to the deceased, or by the exercise of ordinary care and caution he ought to have known them."

These instructions were inapplicable to any state of facts in proof, and were calculated to mislead the jury. There was no testimony from which the jury could legitimately infer that Willette was thrown down and killed by reason of a defective culvert or a defective cross-tie. Instructions should not be based upon unproved hypotheses.

In the first place there was no evidence of any defect in the culvert or in the tie. They were constructed and placed in position to form a secure road-bed for the passage of defendant's trains, not to furnish a footpath or standing place for defendant's employes or others; and there is nothing to show that they were inadequate or ill-adapted to the purpose for which they were designed.

The court also refused the following prayer of the defendant:

3. RAIL-ROADS: Brake-man: Rights and risks.
"If the jury believe from the evidence that the deceased, in the performance of his duty as the employe of the company, went upon the culvert under the road-bed to couple or uncouple cars, and was injured thereby, or by stepping upon the edge of a tie at the side of the culvert, such edge scaling and giving away, whereby he fell and was injured, such facts do not tend to prove negligence on the part of the defendant."

The employment of brakeman on a railroad is extra

hazardous in its nature. For this he is in some degree compensated by high wages paid for mere manual labor, not requiring any special skill or previous training. He assumes all risks necessarily incident to his employment, and to give him a right of action against his employer for an injury sustained in its service, the company must have owed him some duty arising from contract or from the relation itself ; and a failure to perform that duty must have been the proximate cause of the injury. Undoubtedly the master is bound to furnish his servants with proper machinery, agencies and instrumentalities for the due conduct of his business ; and this in the case of a railway company includes a safe and sufficient roadway. But here the road-bed appears to have been in good repair. The fact that the sap surface of the tie had partially decayed is no indication that it was too unsound to support the weight of the trains. This is probably more or less the case with all wooden ties in a few months after they are laid down.

We cannot say as matter of law that it was the defendant's duty to furnish the plaintiff's intestate with a safe standing place when he alighted to couple or uncouple cars. In fact there was no necessity to alight at all, as the order given might as well have been executed by means of the brake-rod.

For the errors above indicated, the judgment is reversed and a new trial granted.