CASE 10—IN EQUITY—DECEMBER 9.

## Berg v. Berg's Administrator.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. DESCENT AND DISTRIBUTION—DAMAGES FOR DECEDENT'S DEATH.— Damages recovered by a personal representative for the death of his intestate recovered prior to the act of the General Assembly giving such damages to the mother (Sec. 6 of Ky. Stat.) were properly distributed under the law in force prior to that enactment.

2. STATUTES CONSTRUED TO BE PROSPECTIVE IN THEIR OPERATION.— The act of 1893 (Sec. 6, sub-sec. 3, Ky. Stat.) giving the recovery of damages for the death by negligence to the mother in the absence of widow, child or children and father, has no application to a recovery had prior to its enactment.

3. DISTRIBUTION BETWEEN MOTHER, AND SISTERS OF THE HALF BLOOD.—Under a statute in force prior to the enactment of Sec. 6 of the Kentucky Statutes, where a decedent lost his life by the negligence of another, a recovery was properly divided one-half to his mother and the other half to his sisters of the half blood in equal parts.

LAWRENCE S. LEOPOLD AND A. LINCOLN DEMBITZ FOR APPELLANT.

1. At the time of the injury and verdict there was no provision as to the disposition of the funds recovered; and before the affirmance and payment, an act was passed (Sec. 6, Ky. Stat.) by which the entire recovery in a case like that at bar, passed to the mother. This act controlled the distribution of the amount

Berg v. Berg's Admr.

of the recovery. Givens v. Kentucky Central Railway Co., 89 Ky., 231; Armstrong v. Armstrong, 1 Ore., 209.

2. If the old statute of descent is to govern the distribution, then the mother's share was two-thirds, the sisters of the decedent being sisters of the half' blood. Under the General Statutes which were in force when the injury occurred and the recovery was had, collaterals of the half blood took in all one-half as much as those of the whole blood, or as ascending kindred when they took with either. Endlich on the Interpretation of Statutes, ed. of 1888, Sec. 23, p. 29; same, Sec. 182, p. 250; Sutherland Statutory Construction, ed. 1891, p. 419; Sneed v. Commonwealth, 6 Dana, 338; Peyton v. Moseley, 3 Mon., 77; Bosely v. Mattingly, 14 Ben Mon., 72; Brace v. Shaw, 16 Ben. Mon., 43; Dazey v. Killam, etc., 1 Duv., 403; Commonwealth v. Farmers' Bank, etc., 97 Ky., 589; City of Henderson v. Lambert, 8 Bush, 607; Milner v. Calvert, 1 Met., 472; Petty v. Malier, 15 Ben. Mon., 591; Nixon's Heirs v. Nixon's Admr., 8 Dana, 5; Blunt v. Gee, 5 Call., (Va.), 481; Garland v. Harrison, 8 Leigh (Va.) 368; Marlow v. King, 17 Tex., 177; Sharp v. Klinpetre, 17 La. An., 264; Anderson v. Bell, 140 Ind., 375; (29 L. R. A., 541); Bailey v. Commonwealth, 11 Bush, 688; Sams v. Sams' Admr., 85 Ky., 396; Bird v. Board of Commissioners, 95 Ky., 195; Minor's Institutes, book 2, p. 549; Dembitz's Land Titles, p. 271.

3. The Legislature had the right to pass an act for the distribution of damages which had been recovered antecedently to the enactment. Board of Internal Improvement v. Scearce, 2 Duv., 576; Huntington v. Attrill, 146 U. S., 657; Rend v. Stuart, 129 Mass., 407. Parties may have vested rights under contract but they can have none under tort, and an act providing for the distribution of damages recovered for a tort does not impair the obligation of the contract. Cooley on Constitutional Limitations, 6th ed., 351; Louisiana v. Mayor of New Orleans, 38 La. An., 121; Freeland v. Williams, 131 U. S., 415; Endlich on Interpretation of Statutes, Sec. 480; same, 281.

CARROLL & HAGAN, FOR APPELLEES.

The statutes in force at the time of the death of August Berg controlled the descent and distribution of his estate. Under Sec. 1, chap. 31, General Statutes, the mother's right was limited to one moiety. Milner, etc., v. Calvert, 1 Met., 472; Clarke v. Clarke, 17 Ben. Mon., 698.

[6]

A. LINCOLN DEMBITZ AND L. S. LEOPOLD FOR APPELLANT, IN A PETITION FOR A REHEARING.

Additional citations: Sturgis v. Crowninshield, 4 Wheat., 122; Arthur v. Morrison, 96 U. S., 108; Noxon v. Phillips, 21 N. J. Eq., 90; Logan v. Earl Courtown, 13 Beav., 22; Smith v. State, 66 Maryland, 215; Woodbury v. Berry, 18 O., 462; Alexander v. Worthington, 5 Maryland, ——; Montclair v. Ramsdell, 107 U. S., 147; Aldridge v. Mardoff, 32 Tex., 204; Gates v. Salmon, 35 Cal., 576; Bradubry v. Wagenhurst, 54 Penn. Stat., 180; Johnson v. Hudson R. R. Co., 49 N. Y., 455.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

On October 4, 1890 August Berg died intestate and without issue, leaving as his heirs at law the appellant (his mother), Catharine Berg, and four half-sisters, to wit, Emma Berg, Louisa Deitzel, Augusta Burns, and Matilda Kraft. An action was instituted by August Berg's personal representative to recover damages resulting from an injury which was adjudged to have been inflicted by the negligence and carelessness of a railroad company. It was an action under section 1, c. 57, Gen. Stat. The judgment was recovered in 1893, from which an appeal was prosecuted, and afterwards affirmed by this court. After the rendition of the judgment in the court below, and before the affirmance of it by this court, the General Assembly enacted a law by the terms of which the mother, in a case where the facts are the same as in this case, would take the entire amount of the recovery, less certain charges against it. The question involved in this case is as to what share the mother takes in the fund, and what share the four sisters of the half blood take in it. The court below adjudged that the mother was entitled to one-half of it, and the four sisters to the other half. It is insisted by counsel for appellant: First, that under the statute she is entitled to the whole of the judgment, less certain

expenses; second, if she is not entitled to the whole, then she is entitled to two-thirds of it. It is claimed that she is entitled to the whole of it by reason of the statute to which we have alluded. Section 241 of the present Constitution provides that: "Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made the same shall form a part of the personal estate of the deceased person." Under the statute in force at the time of the intestate's death, and under the provision of the Constitution which we have quoted, the recovery formed part of the personal estate of the intestate, and passed by descent, as any other of his personal estate would have passed.

.It is unnecessary to decide the question as to whether the General Assembly could enact a law which would have had the effect of giving the entire amount of the judgment to the mother, as, in our opinion, the act is, and was intended to be, prospective in its operation, and does not affect the rights acquired under the law in force at the time of the intestate's death. It follows from this conclusion that the General Statutes control in the distribution of the fund. Under section 11, c. 31, Gen. Stat., surplus personal estate of an intestate passes to, and is distributed among, the same persons, in the same proportions, to whom and to which real estate is directed to descend, with certain exceptions, which do not relate to the question involved in this case. Sec. 1, c. 31, Gen. Statutes, provides how an intestate's real estate shall descend. Subdivisions 2 and 3 of section 1 are as follows: "2d. To his father and mother, if both are living, one moiety each;

but if the father be dead, then the mother, if living, shall inherit one moiety, and the other moiety shall descend to the brothers and sisters, and their descendants; if no brothers or sisters, or the descendants of either, the mother shall take the whole estate; if the mother be dead, then the whole estate shall pass to the father; if no father or mother, then—3d. To his brothers and sisters and their descendants." If the sisters were of the whole blood, it is clear that the mother would get one moiety of the estate and the sisters would get the other moiety; but it is contended that it descended otherwise by reason of section 3, c. 31, Gen. Stat., which reads as follows; "Collaterals of the half blood shall inherit only one-half as much as those of the whole blood, or as ascending kindred, when they take with either." It is contended that the mother in this case, if she does not get the whole (for the reason heretofore stated), is entitled to two-thirds of the estate, because she takes double the amount which the four sisters take. Under the old statute, when a child died leaving a mother and brothers and sisters, the mother took a share like a brother or sister of the whole blood; and, if there were brothers and sisters of the half blood, then she took a share double that of a sister or brother of the half blood. This court, in construing the statute, held that it regarded the individuals of the two classes, and not the classes collectively, in making the apportionment between the collaterals of the whole and those of the half blood. It was said in Nixon's Heirs v. Nixon's Adm'r, 8 Dana, 7, that: "In opposition to the opinion of the Circuit Court, we think the statute, in making the apportionment between collaterals of the whole and those of the half blood, regards the individuals of the two classes, and not the classes collectively; and that it fixes the ratio

of apportionment with reference to the individuals, and
not to the classes as such." Under the old statute, then,
the mother, in a case like this, would have been entitled
to double that of either of the sisters of the half blood.
In Milner v. Calvert, 1 Metc. 472, the mother was held to
be of the ascending kindred, and took a share equal to a
brother or sister of the whole blood, and, of course, should
have had a share double that of either of the collaterals
of the half blood. The court was construing a statute
which gave the estate of the intestate, who left neither
children nor their descendants nor father surviving him,
*"to his mother, brothers and sisters and their descend-
ants."* The statute which we are construing gives one
moiety of the estate to the mother, and the other to his
brothers and sisters. Suppose, in this case, the father ·
and mother of the intestate were both dead, and that he had
left a brother or sister of the whole blood and the four
sisters of the half blood, then such one of the whole blood
would not get a share double that of the four sisters of
the half blood, but would get one double that of either of
those of the half blood. A mother does not take the same
share of the estate under the General Statutes that she did
in the former ones,—she does not take a share equal to
a brother or sister of the whole blood, but takes one-half
of the estate. The estate which the mother takes under
the General Statutes is not uncertain, depending upon the
number of brothers and sisters of the whole or half blood,
as was the case under a former statute. Under this stat-
ute she can not be held to be an ascending kindred, so as
to give her a share equal to a brother or sister of the
whole blood, and double that of one of the half blood,
because the statute gives her one-half of the estate. Now,
we are asked, in addition to that one-half, to give her

part of the other half—one-sixth of the other half. The contention is to the effect that she takes the one-half which the statute gives her; then, as an ascending kindred, takes the share in the remaining half which a brother or sister of the whole blood would have taken had one survived the intestate. Suppose that one brother or sister of the whole blood, together with the four sisters of the half blood, had survived the intestate, it could not, with any reason, be argued that the mother would take any except one-half of the estate. Does the fact that neither brother nor sister of the whole blood survived the intestate give her an interest in the half of the estate which descends to brothers and sisters? The language of the statute does not restrict the mother to a like share of a brother or sister of the whole blood, or to one double that of one of the half blood. The half she takes is four times that of the share taken by either of the sisters of the half blood; and, if they were of the whole blood, the same ratio of apportionment would still exist. It would reduce the statute to an absurdity to make section 3 apply to a case like this, and, in our opinion, has no application to it. If the mother had not, but a brother of the whole blood had, survived the intestate, then the section would have applied. We might state other cases to which it would apply, but it is unnecessary to do so. The judgment is affirmed.