National Home, Inc., f/u/o Mike Falone, Appellee, v. American National Bank and Trust Company of Chicago, Garnishee-Defendant, Appellant.

Gen. Nos. 47,241, 47,242.

First District, Third Division.

January 15, 1958.

Released for publication February 10, 1958.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago (David Jacker, Charles W. Johnson, and John J. Edman, of counsel) for garnishee-defendant, appellant.

Allen, Darlington & Elliott, of Chicago, for plaintiff-appellee.

JUSTICE FRIEND delivered the opinion of the court.

Mike Falone and Harry Larson, doing business as Active Provision Company, and E. A. Aaron Brothers had judgment against National Home, Inc., in the amounts of $2,849.14 and $1,008.54, respectively. They brought separate garnishment suits in the name of the judgment debtor against American National Bank and Trust Company of Chicago as garnishee. On the basis of the answer of the garnishee and certain agreed facts, and without hearing evidence, the trial judge entered judgments for plaintiffs in the foregoing amounts, from which the garnishee appeals. On its motion the two causes were here consolidated for the purpose of appeal.

From the agreed facts, and the garnishee's answers and exhibits attached thereto, it appears that on December 30, 1954 the garnishee entered into an agreement with National Home, Inc., pursuant to which garnishee purchased certain notes and contracts (referred to as "paper") received by National Home, Inc., from its customers. By an initial deposit of $5,000 National Home, Inc., set up a "Reserve Fund for Instalment Paper Purchased from National Home, Inc.," in the form of an account on the books of the garnishee. This fund was increased by the excess of the discounts on the paper purchased over a specified per-

centage amount. The contract provided that the garnishee could debit the fund for (1) the amount of any uncollectible paper, plus collection expenses, and (2) any amounts previously credited to the fund for which the obligor had been made an allowance for prepayment. The garnishee agreed to credit the fund for any receipts on paper previously debited as uncollectible. The agreement further provided that the garnishee would semiannually pay National Home, Inc., the excess, if any, in the reserve fund over (1) the outstanding amount of paper on which installments had been past due thirty days plus ten per cent of the outstanding amount of all other paper, or (2) $10,000, whichever was greater. To illustrate, if the fund never exceeded the contracts on which installments were due for thirty days plus ten per cent of all other contracts, no semiannual payments would be due; or, if the fund never exceeded $10,000, no semiannual payments would be due.

The contract further provided that "In the event of termination of this agreement, the Bank [garnishee] shall have the right to withhold further payment from the Fund until the Bank's investment in all paper purchased hereunder shall have been paid in full, and at that time the balance, if any, in the Fund shall be paid to the Company, provided, however, that if the amount of the Fund shall at any time after such termination exceed the Bank's investment in the paper, the excess shall be paid to the Company within ten days after the end of the calendar month in which such excess arises."

The garnishment proceedings were filed, respectively, on November 21, and December 8, 1955. The garnishee filed answers on December 23, 1955 and January 3, 1956, wherein it set up the existence of the fund, in the amount of $4,207.85, but denied that it was subject to garnishment at the time of the filing of the

113

answers. It averred that it had no funds due and owing the judgment debtor, National Home, Inc., other than "an Industrial Loan Division reserve fund in the amount of $4,207.85, which will be payable to the said National Home, Inc., when the outstanding balances of a purchase contract between National Home, Inc., and the American National Bank & Trust Company is exceeded by the amount of funds reserved . . . At the present time the said sum . . . is not subject to garnishment." Copies of the purchase contract pursuant to which the reserve fund was created were attached to the answers.

In February 1957, more than a year after the answers were filed, plaintiffs asked that the garnishee divulge the amount that was payable under the purchase agreement with National Home, Inc., at that time, rather than on the date the garnishment answer was filed. At a hearing on March 19, 1957 it was agreed by the parties that the final balance due National Home, Inc., was $3,857.68, but garnishee denied that this amount was subject to garnishment.

 Under the settled rule in this State the Garnishment Act (Ill. Rev. Stat. 1957, ch. 62) is strictly interpreted; its application is limited to debts which are owing at the time the garnishment answer is filed. In Zimek v. Illinois Nat. Casualty Co. (1939), 370 Ill. 572, the court said that it had "recognized the general rule that the indebtedness sought to be garnisheed must be a liquidated sum due without contingency at the date when the answer to the garnishment suit is filed. [Citing cases.] Usually it must be a claim on which the judgment debtor, himself, could have maintained an action against the garnishee." The debt in the instant proceeding meets neither of these tests since, as of the time the answers were filed, it had not been determined whether the garnishee would ever owe any amount to National Home, Inc. Under the

contract between the judgment debtor and the garnishee, if a substantial portion of the obligors on the notes and contracts purchased were to default, then no sum would ever be due; and even if a sum were to be due in the future, its amount necessarily was to be determined by future events. Pressed Steel Equipment Co. v. Thornburgh Pressteel Co. (1923), 228 Ill. App. 1, is precisely in point. It was cited to the trial judge, who observed that "that was [filed] a long time ago." Nevertheless, that case has never been overruled; its reasoning is supported in Zimek v. Illinois National Casualty Co., and it represents the rule in this State.

 Plaintiffs concede, and the trial judge evidently recognized, that under these circumstances and the applicable rule of law, no recovery was possible under the Garnishment Act. However, the court, sua sponte, invoked a different statute, the supplementary-proceedings section of the Civil Practice Act, effective January 1, 1956 (Ill. Rev. Stat. 1957, ch. 110, sec. 73), thereby making available to the judgment creditors (plaintiffs) the balance which became due National Home, Inc., long after the filing of the garnishee's answers. However, the supplementary-proceedings section of the Civil Practice Act, pursuant to which the judgments herein were entered, provides that "a judgment creditor, or his successor in interest when that interest is made to appear of record, is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from execution or garnishment, and of compelling the application of nonexempt assets or income discovered toward the payment of the amount due under the judgment or decree. A supplementary proceeding shall be commenced by the service of a citation issued by the clerk. The procedure for conducting supple-

115

mental proceedings shall be prescribed by rules." The rules of the Supreme Court set out the necessary steps which must be taken to perfect a supplementary proceeding (Ill. Rev. Stat. 1957, ch. 110, sec. 101.24). Obviously, the remedies available by supplementary proceeding cannot be invoked if the necessary steps set out by the statute and the Supreme Court rules are not followed. Plaintiffs, having brought garnishment actions, cannot now convert them into supplementary proceedings by a mere oral statement to the court, and without complying with the required statutory procedure.

These are garnishment actions, and plaintiffs must justify recovery under the Garnishment Act; they cannot rely upon the statutory remedy which they neglected to follow.

For the reasons indicated, the judgments of the Circuit Court are reversed.

Judgments reversed.

BURKE, P. J. and BRYANT, J., concur.