In the Matter of the ESTATE of Ronald L. PARSONS, Deceased.

Shirley Diane PARSONS, Administrator, Appellee,

v.

Richard Lee PARSONS and James Scott Parsons, Appellants.

No. 60841.

Supreme Court of Iowa.

Nov. 22, 1978.

Thomas L. Koehler, Cedar Rapids, for appellants.

Don W. Thompson, Sioux City, for appellee.

UHLENHOPP, Justice.

Ronald L. Parsons was killed on October 3, 1973. He was survived by his widow and his two adopted children from a prior marriage. The probate court appointed Parsons' widow as administrator of his estate. At that time § 633.336 of the 1973 Code provided:

> When a wrongful act produces death, damages recovered therefor shall be disposed of as personal property belonging to the estate of the deceased, but if the deceased leaves a spouse, child, or parent, it shall not be liable for the payment of debts of the estate, except debts and charges of the first, second, third and fifth classes.

On September 30, 1975, Parsons' administrator commenced an action for wrongful death. Effective July 1, 1976, the legislature amended § 633.336 of the Code to provide:

> When a wrongful act produces death, damages recovered therefor shall be disposed of as personal property belonging to the estate of the deceased, however, if the damages include damages for loss of services and support of a deceased spouse and parent, such damages shall be apportioned by the court among the surviving spouse and children of the decedent in such manner as the court may deem equitable consistent with the loss of services and support sustained by the surviving spouse and children respectively. If the decedent leaves a spouse, child or parent, damages for wrongful death shall not be subject to debts and charges of the decedent's estate. 66 G.A. ch. 1227, § 4.

On April 19, 1977, the probate court authorized the administrator to settle the litigation regarding Parsons' death. The settlement netted Parsons' estate about $75,000 for distribution. The administrator thereupon applied for an order of distribution, contending that amended § 633.336 applied. The children claimed that § 633.336 applied as it read when Parsons was killed. The probate court adopted the administrator's position and awarded the widow approximately $70,000 and the children together $5000. The children appealed.

If the settlement and distribution had occurred before the statutory amendment in 1976, the widow would have received approximately $41,667 and the children together approximately $33,333 under then § 633.336 and our regular descent and distribution law. Code 1973, §§ 633.211(4), 633.219(1). Did the amendment to § 633.336 reach back and increase the widow's share and reduce the children's shares, as the probate court held?

The general principles on the prospectivity-retrospectivity of statutory amendments are well established; the problem arises in their application. The principles are stated thus in 82 C.J.S. Statutes § 414 at 981:

> As a general rule, statutes are construed to operate prospectively unless the legislative intent that they be given retrospective or retroactive operation clearly appears from the express language of the acts, or by necessary or unavoidable implication.

And in 82 C.J.S. Statutes § 421 at 996–997:

> A difference is recognized between statutes affecting substantial rights and those affecting only procedure, and the courts are more liberal in the interpretation relative to retrospective operation in the latter than in the former case. Although the general rule that statutes will be construed to be prospective only and not retrospective or retroactive . . . has been held to apply to statutes relating to remedies and procedure, in most jurisdictions the rule does not apply to such statutes. As is otherwise stated, such general rule is subject to an exception in the case of a statute relating to remedies or procedure, such as a statute creating an additional remedy, although such exception does not apply where there was no remedy whatever before the statute was enacted, and even procedural statutes may be regarded as prospective and not retrospective where they tend to destroy existing rights or to create new rights. While it may be said that statutes relating to remedies or procedure may be given a retroactive operation, a

statement of the rule perhaps more accurate is that statutes merely affecting the remedy or law of procedure apply to actions begun after their passage, whether the right of action accrued before or after the change in the law, at least in the absence of a constitutional or statutory provision to the contrary.

Similar statements are made in 73 Am. Jur.2d Statutes § 350 at 487 ("courts observe a strict rule of construction against a retrospective operation, and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to operate prospectively only, and not retroactively"), and § 354 at 489 ("remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law").

The question here is whether the children had a substantive right under the original statute on distribution of the wrongful death proceeds, or whether the statutory amendment relates only to the procedure or remedy and thus controls.

The 1976 amendment to § 633.336 does not state that it operates retrospectively. Under such circumstances, the courts hold that distributees such as these children have a right to their shares under the original statute which a subsequent amendment changing the mode of distribution does not take away. Thus the Illinois Appellate Court had an issue almost identical to the present one in the case of In re Dance's Estate, 16 Ill.App.2d 122, 130, 147 N.E.2d 385, 390. The statute in effect at time of death distributed wrongful death damages as personal property; a 1955 amendment distributed the damages in proportion to the claimants' dependency. The defendants-claimants were siblings of the minor decedents. The court held, "We are of the opinion that in the instant case the rights of the defendants became vested upon the deaths of the minor decedents and that the 1955 amendment should not be retroactively

applied." The court held similarly in Berg v. Berg's Administrator, 105 Ky. 80, 83, 48 S.W. 432, 433. The statute in force at time of death distributed wrongful death damages as personal property; a subsequent amendment gave the damages to a parent. The court stated:

It is unnecessary to decide the question as to whether the General Assembly could enact a law which would have had the effect of giving the entire amount of the judgment to the mother, as, in our opinion, the act is, and was intended to be, prospective in its operation, and does not affect the rights acquired under the law in force at the time of the intestate's death.

To the same effect is Richmond v. Chicago & W. M. Ry., 87 Mich. 374, 390, 49 N.W. 621, 625. Against the contention that the later law applied to distribution of death damages, the court stated in Richmond that "the distribution of the personal property of Sherwood's estate would, we think, be governed by the law in reference thereto existing at the time of his death, which provided that the property in such a case as this should descend, one-half to his mother, and the remainder in equal shares to his brothers and sisters." Accord: In re Brennan, 160 App.Div. 401, 145 N.Y.S. 440 (statute at death governed distribution); City of Cincinnati v. Bachmann, 51 Ohio App. 108, 199 N.E. 853. See also Little Rock & Ft. S. Ry. v. Townsend, 41 Ark. 382; McKibben v. Mallory, 293 So.2d 48 (Fla.); Biddle v. Moore, 87 Ga.App. 524, 74 S.E.2d 552; Sullivan v. Sullivan, 323 Mass. 671, 84 N.E.2d 32; Fraley v. Muller, 281 App.Div. 1016, 121 N.Y.S.2d 138, rev'd on other grounds, 283 App.Div. 1046, 131 N.Y.S.2d 479; In re Marble, 88 Misc. 339, 151 N.Y.S. 953; In re Weinstein's Will, 153 Misc. 279, 274 N.Y.S. 826; In re Brody's Estate, 155 Misc. 819, 281 N.Y.S. 865; In re Weaver's Estate, 195 Misc. 405, 90 N.Y.S.2d 770; Nohrden v. North Eastern R.R., 54 S.C. 492, 32 S.E. 524; Quinn v. Chicago, M. & St. P. R. R., 141 Wis. 497, 124 N.W. 653; 22 Am.Jur.2d Death § 7 at 611 ("Statutes which create a cause of action for wrongful death or which change the rights under an existing death

statute are ordinarily not given a retroactive effect unless the legislature has clearly expressed an intention that such effect should be given."); Anno. 66 A.L.R.2d 1444, 1445 ("a statute changing the manner and method of distributing the proceeds of a judgment or settlement for wrongful death will not be given a retroactive effect"). A case involving a later statute which was construed to be retrospective by its terms is *De Long v. Green*, 229 Ark. 100, 106, 313 S.W.2d 370, 374 ("we point out that Act 115 was repealed by Act 255 of 1957, which by its language is applicable to all actions for wrongful death, whether arising before or after the effective date of the 1957 statute").

These cited cases are in line with the principle that the rules of distribution at the time of the decedent's death control the devolution of personalty generally, rather than later amendments which are not expressly retrospective. *Blackman v. Baxter, Reed & Co.*, 125 Iowa 118, 100 N.W. 75; *Lorieux v. Keller*, 5 Iowa 196; 23 Am.Jur. Descent & Distribution § 17 at 764 ("As a general rule, a statute of descent and distribution will not be given retroactive effect unless this is the manifest intent of the legislature as expressed in the statute."), and § 21 at 768 ("an estate must be distributed among heirs and distributees according to the law as it exists at the time of the death of the ancestor"). The cited cases on amendments regarding death damages are also in harmony with an Iowa legislative enactment in 1971 entitled "An Act relating to rules of statutory construction." 64 G.A. ch. 77. That Act provides in § 3 (now § 4.5 of the Code):

A statute is presumed to be prospective in its operation unless expressly made retrospective.

And in § 11(1) and (2) (now § 4.13(1) and (2) of the Code):

The reenactment, revision, amendment, or repeal of a statute does not affect:

1. The prior operation of the statute or any prior action taken thereunder;

2. Any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder; . . .

Our prior decisions are not in conflict with the cited cases holding that amendments like the present one do not operate retrospectively. None of our decisions deal with such an amendment. One of them held that a statute creating a remedy for an existing wrong in the consumer fraud context operates retrospectively. *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330 (Iowa). This is in line with the rule already stated regarding retrospectivity of a statute "creating an additional remedy". 82 C.J.S. Statutes § 421 at 997. The same is true of *Schmitt v. Jenkins Truck Lines, Inc.*, 260 Iowa 556, 149 N.W.2d 789. The statute there did not reduce or eliminate a right a person had; it provided a remedy for a loss already existing—loss of services and support. Another case dealt with "remedy" in the strict sense of that term. *Jones v. Bowers*, 256 N.W.2d 233 (Iowa). Another dealt with the burden of proof as a procedural matter (although the quantum of proof was held to be substantive). *Schultz v. Gosselink*, 260 Iowa 115, 148 N.W.2d 434. Still another case dealt with a procedural matter—application of a rule of civil procedure. *Walker State Bank v. Chipokas*, 228 N.W.2d 49 (Iowa).

We conclude that we should adopt the position of the courts which have considered the question elsewhere, and hold that the statutory amendment before us does not apply retrospectively. The wrongful death damages are to be distributed under the statute as it stood when Parsons was killed.

REVERSED.

All Justices concur except ALLBEE, J., REYNOLDSON, C. J., and HARRIS, J., who dissent.

ALLBEE, Justice (dissenting).

The result reached by the court is not consistent with the prior case law of this state. It depends instead upon cases of other states which are based on premises in conflict with the law of Iowa. I therefore dissent.

The question is whether apportionment of wrongful death damages involves substantive or remedial law. The consequences of this determination are these: if the statute is substantive, it is, in the absence of a clear expression of contrary legislative intent, to apply prospectively only. If the statute is remedial, however, it is presumed to apply to actions pending at the time of its passage.

Before considering that central question, however, it is necessary to discuss two preliminary collateral problems: the application of §§ 4.5 and 4.13, The Code, to the case and whether a number of the cases cited by the court lend any support to its conclusion.

Sections 4.5 and 4.13 were added to the Code in 1971. Acts 64th G.A., ch. 77. Since this addition, this court has had occasion to determine the prospective or retrospective application of a statute on several occasions. *See, e. g., Jones v. Bowers*, 256 N.W.2d 233, 235 (Iowa 1977); *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330, 332 (Iowa 1976). In both *Jones* and *Limbrecht*, legislation was found to be retrospective on the basis that it was remedial. Evidently, this court has, without saying so, viewed §§ 4.5 and 4.13 as an incomplete codification of the case law existing before 1971. The results reached in *Jones* and *Limbrecht* could not have been obtained in the face of a strict reading of § 4.5. Yet I do not understand the court to say that those cases are overruled. There is, as a result, an inconsistency which should be resolved in favor of the presumption of retrospectivity of remedial statutes.

The second preliminary point deals with the application of various authorities to the central question at hand. The court cites numerous cases from courts of sister states for the proposition that in the absence of any declaration of legislative intent an amendment to a distribution scheme for wrongful death damages will be applied prospectively only. However, nearly one half of those cases dealt with different problems and are, therefore, distinguishable on their facts. Most of the balance arise

from a substantially different legal background than that present in this state. For that reason, they should not be blindly followed in this situation. In addition, the court challenges the usefulness of *De Long v. Green*, 229 Ark. 100, 313 S.W.2d 370 (1958). I must, therefore, take up the relative merits of these various authorities.

Two cases cited by the court construed amendments which specified that they should apply only after the date that the amendment took effect. *McKibben v. Mallory*, 293 So.2d 48 (Fla.1974), dealt with the question of whether an amendment to a wrongful death act impliedly repealed the prior Florida wrongful death act, so that no recovery could be had for a death which occurred before the date on which the amendment took effect. The court said that it did not, and held the amendment was to apply only to deaths occurring after July 1, 1972. The amendment itself, set out at 293 So.2d 50, provided that it should "not apply to deaths occurring before [July 1, 1972]." Similarly, *Sullivan v. Sullivan*, 323 Mass. 671, 84 N.E.2d 32 (1949), dealt with the application of chapter 614 of the 1946 Acts and Resolves of Massachusetts. Section 7 of that chapter provided: "This act shall take effect on January first, nineteen hundred and forty-seven, and shall apply only to deaths occurring on or after that date."

Several of the other cited cases involved not the mere redistribution of damages acquired under a given measure or formula, but the alteration of the measure or formula itself. That is, the amendments increased the defendant's liabilities by creating obligations to new classes of beneficiaries. The clearest example is *Cincinnati v. Bachmann*, 51 Ohio App. 108, 199 N.E. 853 (1935), where the amendment altered the class of beneficiaries. The old statute allowed the spouse and children to recover. If, and only if, no spouse or children were living, then the decedent's next of kin recovered. Under the amendment, the spouse, children and next of kin were all allowed to aggregate their damages. It thereby added beneficiaries, thus increasing

damages and putting new and additional burdens on the defendant. 51 Ohio App. at 109–11, 199 N.E. at 854. Substantially the same was true of *Biddle v. Moore*, 87 Ga. App. 524, 74 S.E.2d 552 (1953), where the act in question gave the administrator a right to recover. No such right had existed in prior Georgia law. 87 Ga.App. at 525, 74 S.E.2d at 533; *Quinn v. Chicago, M. & St. P. R. Co.*, 141 Wis. 497, 124 N.W. 653 (1910), dealt with the creation of the substantive cause of action in collateral relatives. The extension of the cause of action to new beneficiaries is also the subject of the quotation from 22 Am.Jur.2d *Death* § 7 at 611 (1965).

Finally, in two cases the wrongful death statute was not amended until judgment had been rendered in the action under consideration. In *Little Rock & Ft. Smith Ry. v. Townsend*, 41 Ark. 382, 386–7 (1883), the new act was passed after the appeal was taken. The Arkansas Supreme Court found no impediment in the *Little Rock* case when it held, 75 years later, that an alteration of the distribution method was merely procedural, and therefore retroactive. *De Long v. Green*, 229 Ark. 100, 106, 313 S.W.2d 370, 374 (1958).

And, while the court's quotation, at 18, from *Berg v. Berg's Administrator*, 105 Ky. 80, 83, 48 S.W. 432, 433 (1898), is accurate, it was also gratuitous under the facts of that case, because the amendment again occurred only after judgment had been entered in the trial court.[1]

Most of the balance of the decisions relied upon in the majority opinion were decided by the courts of New York, which applied at the relevant time the rule that damages are a part of the substantive law. *Davenport v. Webb*, 11 N.Y.2d 392, 230 N.Y.S.2d 17, 183 N.E.2d 902 (1962) (conflicts rule); *Frasier v. Public Service Interstate Transp. Co.*, 244 F.2d 668 (2d Cir. 1957) (applying New York conflicts rule). *But see Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961).

The widespread acceptance of this rule, *see Kilberg*, 9 N.Y.2d at 49, 211 N.Y.S.2d at 144, 172 N.E.2d at 534 (Froessel, J., concurring); Druker, *The Question of Damages Resulting from Recent Legislative Charges*, 15 Drake L.Rev. 107, 110 (1966); *Annot.*, 15 A.L.R.2d 762 (1951); 92 A.L.R.2d 1180 (1963), may account for the offhand manner in which several of the cases which the court relies upon reach the conclusion that apportionment of wrongful death damages is substantive. *See, e. g., Berg v. Berg's Administrator*, 105 Ky. 80, 83, 48 S.W. 432, 433 (1898); *Fraley v. Muller*, 281 App.Div. 1016, 121 N.Y.S.2d 138 (1953); *In re Weinstein's Will*, 153 Misc. 279, 281, 274 N.Y.S. 826, 829–30 (1934). It also is very likely to have had an effect on the Michigan and Illinois decisions, although I have discovered no case from either state directly adopting the proposition.

This rule is contrary to that which prevails in Iowa. "[W]e are committed to the rule that damages are essentially a part of the remedy." *Schmitt v. Jenkins Truck Lines*, 260 Iowa 556, 561, 149 N.W.2d 789, 792 (1967). It is noteworthy that this Iowa rule, which is applied in determining retrospectivity, had its genesis in conflicts cases. *See, e. g., Armbruster v. Chicago, R. I. & P. Ry. Co.*, 166 Iowa 155, 162–4, 147 N.W. 337, 340–1 (1914). This rule has been applied to choice of law questions involving the wrongful death statute. *Fabricius v. Horgen*, 257 Iowa 268, 278–9, 132 N.W.2d 410, 416 (1967).

It is also important that the New York cases, insofar as they cite any authority at all, ultimately rely upon *In re Brennan's Account*, 160 App.Div. 401, 145 N.Y.S. 440 (1914). That decision depended upon the two premises that damages for wrongful death were an integral part of the cause of action and that the cause of action belonged to the persons named as beneficiaries and

---

1. Reliance on cases interpreting the Kentucky wrongful death statute is particularly ill founded due to the Kentucky court's view that the scheme of distribution is an integral part of the cause of action for wrongful death. *Workman*

*v. Hargadon*, 345 S.W.2d 644, 647, 92 A.L.R.2d 1123, 1127 (Ky.1961). This is to be contrasted with this court's view of the Iowa statutes; *see In re Estate of Johnson*, 213 N.W.2d 536, 538 (1973).

not to the estate. 160 App.Div. at 406, 145 N.Y.S. at 443–4. Both premises are out of step with the law in Iowa. *Estate of Johnson*, 213 N.W.2d 536 (Iowa 1973); *Egan v. Naylor*, 208 N.W.2d 915, 917 (Iowa 1973); *Cardamon v. Iowa Lutheran Hospital*, 256 Iowa 506, 521, 128 N.W.2d 226, 235 (1964). *In re Dance's Estates*, 16 Ill.App.2d 112, 128–9, 147 N.E.2d 385, 389 (1958) also places reliance on *Brennan* and is therefore, in my view, weakened as authority in this case.

Consequently, the question of this amendment's application cannot be settled by a simple lining up of various cases for or against one result or the other. Reliance on any authority ought to be undertaken only after considering whether the background from which it arises is compatible with the evolution of relevant Iowa decisions.

In this same vein, we must also perform a closer examination of *De Long v. Green*, 229 Ark. 100, 313 S.W.2d 370 (1958). The majority of this court suggests that the amendment considered in *De Long* contained language which specified that that amendment would have retrospective application. An examination of the amendment involved, set out in the margin,[2] will dem-

---

2. ACT 255, 1957 Ark. Acts, provides:

AN ACT to Provide for a Cause of Action and Damages for Wrongful Death, the Survival of Such Actions, Damages and Beneficiaries, Limitations of Actions, and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. WRONGFUL DEATH ACTIONS AND THEIR SURVIVORSHIP. Whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company, or corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death may have been caused under such circumstances as amount in law to a felony. The cause of action herein created shall survive the death of the person wrongfully causing the death of another and may be brought, maintained or revived against the personal representatives of the person wrongfully causing the death of another.

SECTION 2. PARTIES AND LIMITATIONS. Every such action shall be brought by and in the name of the personal representatives of such deceased person, and if no personal representative, then same shall be brought by the heirs at law of such deceased person. Every action authorized by this act shall be commenced within three years after the death of the person alleged to have been wrongfully killed and not thereafter.

SECTION 3. BENEFICIARIES. The beneficiaries herein are the surviving spouse of the deceased person, children, father and mother, brothers and sisters, persons standing in loco parentis to the deceased person, and persons to whom the deceased stood in loco parentis. No part of any recovery hereinafter referred to, shall be subject to the debts of the deceased or become, in any way, a part of the assets of the estate of the deceased person.

SECTION 4. DAMAGES AND DISTRIBUTION. The jury, or the Court in cases tried without a jury, may fix such damages as will be fair and just compensation for the pecuniary injuries, including a spouse's loss of the services and companionship of a deceased spouse and/or mental anguish resulting from such death, to the surviving spouse and next of kin of such deceased person. However, when mental anguish is claimed as a measure of damages under this statute, such mental anguish will be applicable only to the surviving spouse, children, father and mother, brother, sister or persons standing in loco parentis to the deceased and persons to whom the deceased stood in loco parentis, at the time of the injury which caused the death of the deceased. The judge of the court in which the claim or cause of action for wrongful death is tried or is submitted for approval of a compromise settlement, shall, by judgment or order and upon the evidence presented during trial or in connection with any submission for approval of a compromise settlement, fix the share of each beneficiary and distribution shall be made accordingly; provided that in any action for wrongful death submitted to a jury, the jury shall make the apportionment at the request of any beneficiary or party.

SECTION 5. PROBATE COURT. Nothing in this act shall limit or affect the right of Probate Courts having jurisdiction to approve or authorize settlement of claims or causes of action for wrongful death, but the Probate Courts shall consider the best interests of all the beneficiaries under this act and not merely the best interest of the widow and next of kin as now provided by Section 8 of Act 255, Acts of 1951. Ark.Stats. (1947) Section 62–2403.

SECTION 6. REPEAL. Section 1 of Act 53 of Arkansas Acts of 1883 (Ark.Stats.1947 Section 27–903), Act 53 of Arkansas Acts of 1883 as amended by Section 1 of Act 115, Arkansas Acts of 1949 (Ark.Stats., 1947, Section 27–904),

onstrate that there was no such specification. Rather, the Arkansas Supreme Court's language illustrates that court's conclusion that the apportionment of wrongful death damages was remedial and therefore would be presumed to be retrospective in application.

Finally, any weight which the cited annotation, 66 A.L.R.2d 1444 (1959), might carry is dependent upon the cases which it considers. Because it relies primarily upon the cases discussed above its usefulness in guiding the resolution of this case is thereby substantially reduced.

We may now return to the central question which determines whether the amendment to § 633.336 applies retrospectively. Is the distribution of wrongful death damages, modified by this amendment, substantive or remedial law? It is important to recognize, as the court fails to do, that we deal here only with the narrow issue of the apportionment, or distribution, of wrongful death damages. This is to be distinguished from the creation of the cause of action itself by § 611.20, the designation of the person who may bring it by § 611.22, and the measure of damages for loss of spouse and parent, which is fixed by § 613.15. *In re Estate of Johnson*, 213 N.W.2d 536, 538 (Iowa 1973), *quoting Egan v. Naylor*, 208 N.W.2d 915, 918 (Iowa 1973).

"Remedy," when referring to statutes, has been used in two different senses. Application of either sense results in retrospectivity. Both usages are alluded to, and the first is illustrated by, *Schmitt v. Jenkins Trucking Lines, Inc.*, 260 Iowa at 561, 149 N.W.2d at 791–92. There it is used to refer to the award or relief granted in a particular case. But "remedial," as both *Schmitt* and *Limbrecht*, 246 N.W.2d at 332, point out, also refers to legislation which is intended to cure defects in prior law. The amendment to § 633.336 is remedial in both senses.

The conclusion that amended § 633.336 deals with remedial law in the first sense follows directly from the broad statement of the rule contained in *Jones v. Bowers*, 256 N.W.2d 233, 235 (Iowa 1977): "Legislation which gives a party a different remedy from one he previously had is generally held to be applicable to rights of action which arose before its enactment in the absence of expression of a contrary legislative intent." Under this statement of the rule, the amount of recovery for a particular tort may be affected, even after that tort is committed. Thus, even if the apportionment scheme was inextricably bound up in the damages, it would be remedial. *Schmitt*, 260 Iowa at 561, 149 N.W.2d at 792. But it is actually one step removed from damages. In the instant case, only the amount of recovery allocated to each beneficiary is affected.

The amendment is also remedial in the sense that it corrects defects in prior law. This court has had occasion to comment upon the unfairness in the statute before amendment, which conferred "the right to recover for loss of services and support of a deceased spouse and parent on the decedent's estate rather than on those who incurred the loss." *Egan v. Naylor*, 208 N.W.2d at 918. The results previously possible have been referred to as "inequitable, harsh and even bizarre" as well as "whimsical." *In re Estate of Johnson*, 213 N.W.2d at 538–9. This court has, in other situations, operated on the assumption that the legislature is aware of the court's opinions construing the statutes of this state. *See, e. g., Young v. City of Des Moines*, 262 N.W.2d 612, 615 (Iowa 1978) (when a statute is reenacted after judicial interpretation, that interpretation is presumed to be adopted by the legislature). By this authority, it is reasonable to conclude that the amendment under consideration was a response to this court's criticism of the prior law. The amendment entirely satisfied these complaints and criticisms. Its application in this case illustrates the salutary effect of the new rule of distribution. Under the apportionment ordered by the district court the children would have received $5000. That sum is slightly in excess of the amount, before reduction to present value,

Section 1 of Act 84 of Arkansas Acts of 1889 as amended by Act 39 of Arkansas Acts of 1949 (Ark.Stats., 1947, Section 27–905), and all laws

and parts of law in conflict herewith are repealed.

APPROVED: March 12, 1957.

of the decedent's child support obligation computed on the basis that both boys would live to their majority. Judging by decedent's record of payments, that is somewhat more than they would have received had he lived. It is certainly all to which they would have been entitled. The widow was to receive, under trial court's decree, approximately $70,000 after attorney's fees for the loss of her 34 year old husband. The distribution mandated by the majority, under operation of §§ 633.211 and 633.219, bears not the slightest resemblance to what trial court found to be equitable. The court has placed itself in the unseemly position of requiring the application of the inequitable distribution method which it has so harshly criticized. Thus it renders decedent's death a financial windfall for the children.

I would instead adopt the view espoused by *De Long v. Green, supra,* 229 Ark. 100, 313 S.W.2d 370. That case dealt with an amendment, set out in footnote 2, to the Arkansas wrongful death statute which altered the distribution procedure by providing for apportionment by jury rather than distributing the damages through the intestacy statutes. "We regard this as essentially a procedural change, since the substantive right to collect damages for wrongful death is continued in force, with a change in the procedural method by which the distribution of these damages is to be determined." 229 Ark. at 106, 313 S.W.2d at 374. Similarly, the rule of remedial law found in § 633.336 is divisible from the cause of action for wrongful death established as substantive law by § 611.20.

The children also assert a constitutional claim to the method of distribution specified by § 633.336 prior to July 1, 1976. Their claim is that the right vested at decedent's death. I pass the point that the right of recovery for wrongful death was given to the decedent's estate and not to any beneficiaries. *See Estate of Johnson,* 213 N.W.2d at 537-9; *Egan v. Naylor,* 208 N.W.2d at 917. The court defined the terms "accrued and vested" in *Floerchinger v. Williams,* 260 Iowa 53, 59, 148 N.W.2d 410, 413-4 (1967) as denoting "a present, enforceable claim or demand, that which is fixed, settled and absolute, an immediate interest to present or future enjoyment, an interest of absolute ownership not contingent nor subject to be defeated or changed." The only right which vested at decedent's demise was the right to bring an action for the wrongful death which vested in the estate. But until that action was resolved, the right to damages was contingent and was subject to the possibility of defeat. I repeat: we deal here only with the scheme of distribution of damages. Any right to the benefits of such a scheme could not vest until the amount of damages had been established. Because the children had no vested right to the prior provision for distribution, no further consideration of the constitutional issue is required.

In summary, I would conclude that the distribution of damages provided for in § 633.336 is remedial and that, because of the absence of manifestations of legislative intent to the contrary, the amendment should be applied retrospectively. Due to the contingencies of litigation, no right to a particular scheme of distribution could vest until the amount of damages was determined. Trial court was correct in equitably apportioning the damages in conformance with amended § 633.336.

REYNOLDSON, C. J., and HARRIS, J., join in this dissent.